In re the MARRIAGE OF Carita Elaine SNYDER and Dennis Ray Snyder.

Upon the Petition of Carita Elaine SNYDER, Appellant,

and concerning Dennis Ray SNYDER, Appellee.

No. 2–58330.

Supreme Court of Iowa.

Feb. 18, 1976.

Jeffrey B. Millhollin, of Mullen and Millhollin, Corning, for appellant.

Allan L. Goode, Fort Dodge, for appellee.

McCORMICK, Justice.

This is a mother's appeal from a provision in a dissolution decree awarding custody of Shane Allan Snyder, age 3, to his father. We reverse and remand.

The question for us, as it was for the trial court, is whether that award of custody is in Shane's long-range best interest. We accord deference to trial court findings of fact because the trial judge heard the witnesses in person, but we nevertheless review the record *de novo*. The legal principles applicable to a custody award are summarized in *In re Marriage of Winter*, 223 N.W.2d 165, 166–167 (Iowa 1974). They are not in controversy and need not be repeated here.

Carita and Dennis were married in 1969. Shane was born July 14, 1972. The parties separated April 10, 1974, and Dennis has had his custody since that time. Shane appears to be a normal child. No persuasive evidence suggests he has been inadequately cared for or insufficiently loved by either parent. All else being approximately equal, the parties each zero in upon what they contend are serious character flaws in the other.

Dennis is accused of having a violent temper, manifested by two incidents in which he pointed a gun at another. The

first incident occurred before Shane's birth when Dennis pointed a gun at Carita in the course of a domestic dispute. Carita testified Dennis loaded a gun, pointed it at her head, and said "don't even breathe or I'll shoot you". He then told her to call her mother to come and get her. The incident ended when Carita's mother spoke to Dennis on the phone and calmed him down. The second incident occurred when Shane was a baby. Carita allegedly called Dennis' mother a vile name, and Dennis ended up in an altercation during which he pointed a rifle at Carita's brother-in-law. He struck the brother-in-law while holding Shane. In that incident Dennis directed that the police be called. Carita's sister testified that Dennis actually fired the weapon but apparently did not hit anything. After a police officer arrived, Dennis gave the rifle to the officer but, while holding Shane, slammed his fist through a window of the brother-in-law's pickup truck. He was convicted and fined for assault and battery as a result of this incident. We are very much troubled by these incidents and strongly disapprove Dennis' conduct in them. We are even more troubled by the fact Dennis sought to justify this conduct during his testimony at trial. In addition to these temper tantrums, he was also accused of excessive drinking and poor money management. He admitted he drinks "a few beers" but blamed the money problems on Carita.

Carita is accused of irresponsibility, manifested by poor management of household finances, involvement in a hit-and-run accident, and several alleged incidents of adultery.

Upon the whole record, with deference to the superior position of the trial judge to assess the demeanor and credibility of the witnesses, we are nevertheless convinced Shane's long-range best interest would be better served by award of his custody to Carita rather than Dennis. For the first twenty-one months of his life Carita had his principal care and adequately met her parental responsibilities. During most of that period Dennis was an over-the-road truck driver and was away from home much of the time. After the parties separated, Dennis kept Shane but promised to turn his custody over to Carita in two weeks. He did not do so. Instead he turned major responsibility for Shane's care over to his mother where it remained at the time of trial. During the pendency of trial he did not cooperate to provide Carita reasonable visitation rights.

We perceive greater risks to Shane's future if he were to remain in his father's custody than if he were in his mother's. Dennis' character flaws present a greater threat to Shane's well-being than those of Carita. His meanness, aggressiveness, and tendency to violence expose Shane to more danger than Carita's alleged irresponsibility and moral misconduct. In addition, Carita appeared to settle down after the parties separated. She made a home with her mother in Corning and worked as an aide in a Creston nursing home. She proposed to keep Shane with her in the mother's home. Her mother would have Shane's care during the hours Carita worked. She seems devoted to Shane and able to provide him a stable and loving home. We believe she should have been awarded his custody.

Carita has applied for attorney fees in this appeal. She asks that Dennis pay $1635. In a supporting affidavit she recites she does not earn enough to pay the fee. At the time of trial she earned $360 a month working as a nurse's aide in a Creston nursing home and was living with her mother. In resisting her application, Dennis states in an affidavit he has a monthly income of $575 with regular household and living expenses of $470, monthly payments of $193, and a total indebtedness of $8190. At the time of trial the parties were without significant assets. Carita received a $500 lump sum award and trial court attorney fees, which amounts were paid. Considering all these circumstances, we deny her application to require Dennis to pay her attorney fee for this appeal.

The trial court erred in awarding Shane's custody to Dennis. Carita should have his custody, subject to reasonable visitation rights of Dennis which shall, upon remand,

be fixed by the trial court. The trial court shall also fix Dennis' child support obligation.

REVERSED AND REMANDED.

All Justices concur except LeGRAND and REYNOLDSON, JJ., who dissent.

LeGRAND, Justice (dissenting).

The record in this case concerning custody of a three-year-old son is barren of any facts justifying our interference with the trial court decree. The evidence consists principally of a recitation of grievances by each parent against the other. Some have substance, some do not. This is exactly the type of situation in which we would do well to observe our oft-quoted rule that we give weight to the findings of the trial court. Rule 344(f)(7), Rules of Civil Procedure.

On the contrary we have elected to ignore those findings, despite the evenly balanced evidence upon which it rests. I think this is a mistake, and I would affirm.

REYNOLDSON, J., joins this dissent.