*In re* CUSTODY OF BRANDON SCOTT WILLIAMS.—(CASSANDRA Y. WILLIAMS, Petitioner-Appellee, *v.* WAYNE K. WILLIAMS, Respondent-Appellant.)

Third District    No. 81-393

Opinion filed February 26, 1982.

William C. Davis, Jr., of Lewistown, for appellant.

Joseph R. Napoli and Arthur J. Inman, both of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The Circuit Court of Fulton County entered a judgment on April 30, 1980, dissolving the marriage of the petitioner Cassandra and the respondent Wayne. At the time Cassandra was pregnant, so custody of the expected child was reserved. On June 30, 1980, Cassandra gave birth to a male child, Brandon Scott Williams. Subsequent to the birth of the child the parties began living with each other. The testimony is conflicting as to when this cohabitation commenced, but does establish that it was taking place from early October 1980 until December 24, 1980. In January of 1981 the father Wayne filed a petition praying for custody of the child. During the custody hearing the trial court permitted Cassandra to testify as to an alleged violent brutal beating inflicted upon her by Wayne on October 4, 1980. The testimony of Cassandra was that the injuries received from the attack upon her were so severe that she was first hospitalized in the Graham Hospital at Canton and from there she was transferred to the St. Francis Hospital at Peoria where surgery was performed to restore all the fractures above and below her eyes. She further testified that further surgery was scheduled to take place after the custody hearing.

Further evidence adduced at the hearing will be set forth and considered as the same becomes pertinent to the disposition of this appeal.

It was the decision of the trial court that custody of the minor child, Brandon Scott Williams, be awarded to his mother, the petitioner Cassandra.

The respondent Wayne first asserts that it was error for the trial court to consider evidence pertaining to the brutal beating received by Cassandra in deciding the question of the custody of the infant child.

■■ For support of this contention the respondent Wayne relies upon section 602(b) of the Marriage and Dissolution of Marriage Act of our State, which, *inter alia*, provides that in determining custody of a child the court shall not consider conduct of a present or proposed custodian that

does not affect his relationship to the child. (Ill. Rev. Stat. 1979, ch. 40, par. 602(b).) Does this statutory provision relegate a wanton and brutal physical beating by the father of a child's mother to be an act of no significance when determining which parent shall be granted custody? We believe not, for the Act further provides that the court shall determine custody in accordance with the best interests of the child. (Ill. Rev. Stat. 1979, ch. 40, par. 602(a).) The trial court believed that Wayne did inflict the beating upon his wife, even though he denied doing so. For reasons to be later set forth, we agree with the trial court.

An elaboration of the physical assault on Cassandra discloses that at approximately 3 a.m., with no provocation Wayne began a diatribe of profane and filthy language. Cassandra was retreating to the kitchen when she was struck from behind on the head with such force as to propel her across the room. Wayne then sat on her chest and began hitting her in the face with his fists. Cassandra was next stripped of her clothes and forced to engage in sexual relations, during which Wayne continued to say, "I will kill you." For several days thereafter Cassandra had spells of unconsciousness. She pleaded to be taken to a doctor and finally Wayne did so and she received hospitalization and surgery as previously set forth. Mildred Williams, mother of Wayne, testified that the morning after the beating she saw a trail of blood leading from her son's trailer clear down a sidewalk and to a curb.

Wayne now urges that such maniacal acts should not be considered by a trial court in determining a custody question. We disagree. The conduct of Wayne serves as a beacon to the trier of fact of his potential for violence and physical harm, as was the conduct of Lonnie Abdullah in the case of *In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915. In *Abdullah* our supreme court was concerned with an adoption proceeding, but nevertheless the question was whether the father of a three-year-old child was an unfit father because of his murder of the child's mother. It was held that the father was unfit and that he no longer had parental rights. We are not confronted with murder in the instant case, however; the conduct of Wayne was of a degree which approaches the force necessary to commit such a crime.

It is further argued that the trial court was in error by considering the beating because of section 602(a)(6), which provides:

"§602. Best interest of child. (a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

\* \* \*

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or

directed against another person *but witnessed by the child.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 40, par. 602(a)(6).

■■ The question presented is whether that provision of section 602(a)(6) providing that the child must witness the violence bars the trial court in the instant case from considering Wayne's violence in a custody proceeding. The child Brandon may well have witnessed a portion of the respondent's assault, but we deem that to be of no import, for the child was of such tender age as to preclude full comprehension of the events. Whether a child must be aware of harmful conduct on the part of a custodian or proposed custodian before such conduct can be considered by a court was one of the issues raised in the case of *In re Marriage of Padiak* (1981), 101 Ill. App. 3d 306. In *Padiak* the reviewing court held that the best interests of the child may necessitate removing the child from a potentially harmful environment irrespective of the child's state of knowledge.

The supreme court of our State has made it clear that the trial court need not refrain from modifying custody until children have suffered actual tangible harm. *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421.

The respondent further contends that the trial court's decision was contrary to the manifest weight of the evidence. In addressing this issue we must continue to examine certain evidence surrounding the beating administered to Cassandra. Wayne denies that he was the perpetrator of the assault and his testimony implied that a friend, Roger Wilcoxen, could well have been the guilty party. Wilcoxen and his wife had been guests of Wayne and Cassandra during the evening of October 3 and into the early hours of October 4, 1980. Wayne subpoenaed Wilcoxen, but never called him as a witness at the custody hearing. We also note that prior to the custody hearing Wayne requested that any evidence relating to the alleged striking of Cassandra by him be excluded. It defies logic to conclude that this request was made for the protection of anyone's interest other than Wayne's. We further deem it significant that after Cassandra was seriously harmed it was Wayne who for three days kept her confined in the trailer and refused to permit her to have medical attention. The mother of Cassandra testified that when she attempted to phone her daughter on October 5, 1980, it was Wayne who answered and informed her that Cassandra was asleep. Later in the day the mother again attempted to call her daughter, but Wayne again stated that she was asleep. The following day Cassandra's mother again attempted to reach her daughter by phone and was informed by Wayne she was sick and couldn't come to the phone; however, he indicated that the illness was nothing serious.

During the hearing Wayne testified that he regularly attended church; however, the pastor of the church testified that he hadn't attended in the year of 1980, but commenced attending a few months prior to the custody hearing, which would be the approximate time that he filed his petition for custody.

Wayne further testified that he was paying child support for two children from a prior marriage and that his payments were almost paid to date. Evidence from the circuit clerk's office disclosed that he was approximately $5,000 in arrears in his payments.

■■ The cross-examination of Wayne and the testimony of other witnesses destroyed Wayne's credibility, and the trial court was correct when it in effect stated in written correspondence to the parties that it did not believe Wayne was the fit parent which he attempted to portray.

For the reasons set forth the judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

BARRY, P. J., and ALLOY, J., concur.