297 S.E.2d 901

**Robert Lee COLLINS**

v.

**Ada L. COLLINS.**

No. 15633.

Supreme Court of Appeals of West Virginia.

Nov. 19, 1982.

Dissenting Opinion Nov. 24, 1982.

McGraw, J., dissented and filed opinion in which Miller, C.J., joined.

Anthony G. Halkias, Charleston, for appellee.

Billie Gray, Baltimore, Md., for appellant.

PER CURIAM:

Appellant, Ada L. Collins, appeals from a November 12, 1981 final order of the Circuit Court of Tucker County finding both appellant and her former husband, Robert Lee Collins, unfit, and granting permanent custody of Robert Lee Collins, II, their son, to Bueford and Josephine Collins, the infant's paternal grandparents. Appellant's four assignments of error may be fairly reduced to the single contention that the trial court abused its discretion in awarding custody of the infant to persons other than the primary caretaker. We conclude that the trial judge's decision was amply supported in the record, and affirm.

Robert Lee Collins and Ada L. Collins were married on March 10, 1979 and their child, Robert Lee Collins, II, was born in June of that year. On July 25, 1980, appellee filed a complaint against appellant seeking a divorce on the ground of irreconcilable differences. Appellant did not contest the divorce but sought custody of Robert Lee Collins, II. Appellee resisted appellant's request for custody of the infant. Between September 22, 1980 and April 10, 1981, numerous evidentiary hearings were held on the issue of custody.

On April 28, 1981, the trial judge issued his final order awarding permanent custody of the infant to the paternal grandparents. An opinion accompanying the order set forth the court's findings of fact and conclusions of law.

The trial court found both the appellant and the appellee to be unfit parents. In support of its ruling as to the appellant, the court cited the appellant's consistent failure to adequately clean and organize the home in which she resided with the infant and her two children by a previous marriage. The court found that unsafe conditions prevailed in the home. On one occasion when appellee attempted to exercise his right of visitation with the infant, appellant refused to allow him to take the child. Although admittedly not physically threatened the appellant picked up a rifle and fired at least two shots in the direction of the appellee. Photographs were admitted into evidence purporting to show the vehicle in which the appellee's girlfriend and her two children were seated at the time of the shooting. The vehicle depicted had several bullet holes in it, though appellant suggested these might have been made by shots fired at the car later, in an attempt to fabricate evidence. The trial court concluded, we think quite rightly, that appellant had "demonstrated [a] tendency to be violent as evidenced by her willingness to threaten with and to actually shoot a deadly weapon at human beings when she was upset, but not in any way threatened."

Appellee was found to have no child-rearing experience. He claimed to have assisted in certain child-rearing duties when living with appellant, but the trial court found that he lacked the requisite skills to care for Robert Lee Collins, II. Also, the appellee's workplace and home were considerable distances apart. The appellee reported that he intended to leave the child with his parents while at work. Though the appellee sought custody of the infant, he did not indicate any intention to develop the child care skills which he lacked.

The paternal grandparents were present throughout the many hearings conducted in this matter. They indicated by their testimony that they desired custody of the infant and, in fact, they offered to adopt him. It is undisputed that the grandparents' home is a clean and safe place for the child. The trial judge noted the grandparents' deep emotional commitment to the infant.

This Court has previously set forth the rules governing the determination of permanent custody. In Syllabus Point 6 of

*Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981) we determined that a fit primary caretaker generally has a right to custody of a child of tender years:

"In a divorce proceeding where custody of a child of tender years is sought by both the mother and father, the court must determine in the first instance whether the primary caretaker is a fit parent, and where the primary caretaker achieves the minimum, objective standard of behavior which qualifies him or her as a fit parent, the trial court must award the child to the primary caretaker."

There is no real dispute in this case that appellant was the infant's primary caretaker. The trial court found, however, that she was an unfit parent and, therefore, refused to award her custody.

This Court has enunciated the standard by which the fitness of a parent is to be judged in several decisions:

"A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her child will be recognized and enforced by the courts." Syl. Pt. 1, *Leach v. Bright,* 165 W.Va. 636, 270 S.E.2d 793 (1980); Syl. Pt. 2, *Hammack v. Wise,* 158 W.Va. 343, 211 S.E.2d 118 (1975); Syllabus, *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d 798 (1969); Syllabus, *Whiteman v. Robinson,* 145 W.Va. 685, 116 S.E.2d 691 (1960).

We have recognized the trial court's discretion in awarding custody must not be disturbed unless clearly wrong.

"The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused;

however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal." Syl. Pt. 2, *Leach v. Bright,* 165 W.Va. 636, 270 S.E.2d 793 (1980); Syl. Pt. 2, *Funkhouser v. Funkhouser,* 158 W.Va. 964, 216 S.E.2d 570 (1975).

In the circumstances presented in this case, we cannot say that the trial court abused its discretion in ruling that both appellant, the infant's mother and primary caretaker, and appellee, the infant's father, were unfit to have permanent custody of the infant; or in granting permanent custody to the infant's paternal grandparents.*

Affirmed.

MILLER, C.J., and McGRAW, J., dissent and reserve the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

As the majority correctly notes, a trial court's findings on the issue of child custody are largely discretionary and will not be disturbed on appeal unless clearly wrong. *See Leach v. Bright, supra.* Although there was considerable contradictory testimony below, there is evidence on the record to support the lower court's findings. However, there is also evidence which indicates that the appellant, despite her limited resources, was making a good faith effort to provide better living conditions for her children. In light of this evidence, I am disturbed by the trial court's decision to grant permanent custody to the infant's paternal grandparents.

I also find confusing the lower court's statement that if either party could demonstrate a favorable change in conditions, they would be permitted to petition the court for a change of custody. However, in order to justify a change of child custody, in addition to a change in circumstances of the party seeking custody, it must also be shown that such change would material-

---

* The trial judge noted in his opinion that if either appellant or appellee demonstrated that they had become a proper person to have custody of the infant, the court would consider a petition for change of custody. We believe this option protects the parents' legitimate interest in custody of their child.

ly promote the welfare of the child. *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980); *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977). Given the impecunious situation in which the appellant finds herself, it is unlikely that she will be able to meet this standard. I therefore disagree with the majority's statement that "this option protects the parents' legitimate interest in the custody of their child." Majority opinion, *supra* at 903, fn. On the record before the Court, I believe that a temporary award of custody to the grandparents would have been more appropriate and, indeed, may have been intended by the lower court. I would remand for clarification on this point.

I am authorized to state that Chief Justice MILLER joins me in this dissenting opinion.