332 S.E.2d 260

**Juanita STACY**

v.

**Earl STACY.**

No. 16728.

Supreme Court of Appeals of
West Virginia.

June 27, 1985.

Norman Googel, APALRED, Welch, for appellant.

Rudolpf J. Murensky, LaCaria & Murensky, Welch, for appellee.

PER CURIAM:

The appellant, Juanita Stacy, appeals from a final order of the Circuit Court of McDowell County which, *inter alia*, awarded her former husband, Earl Stacy, the appellee, custody of the two children born of the parties' marriage. For the reasons set forth below, we reverse and remand for further proceedings.

On April 20, 1983, the appellant filed suit for divorce in the Circuit Court of McDowell County alleging mental and physical cruelty and irreconcilable differences. She sought custody of the parties' two infant children, Michael Ledon Stacy, age four, and Jennifer Erlene Stacy, age nine months. The appellee subsequently filed an answer denying the allegations of cruelty but admitting that irreconcilable differences had arisen between the parties. He counterclaimed on the grounds of cruelty and adultery and also sought custody of the two infant children.

Although no order was entered to the effect, the appellant was awarded temporary custody of the children in June of 1983. On June 11, 1984, a final hearing was held on the issues raised. At the conclusion of the hearing, by order entered June 18, 1984, the court awarded a divorce to the appellee on the grounds of adultery. In addition, the court awarded custody of the two children to the appellee, finding that he was a fit and proper person to have such custody and that appellant was not a fit and proper person to have custody. The appellant was granted limited visitation privileges.

In this appeal the appellant alleges that the court erred in failing to make findings with regard to which parent was the primary caretaker of the children and in failing to apply the primary caretaker presumption to the facts of the case.

In *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), we held that "[w]ith reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." [1]

In *Garska, supra,* we instructed courts on the application of the primary caretaker presumption:

> In a divorce proceeding where custody of a child of tender years is sought by both the mother and father, the court must determine in the first instance whether the primary caretaker is a fit parent, and where the primary caretaker achieves the minimum, objective standard of behavior which qualifies him or her as a fit parent, the trial court must award the child to the primary caretaker.

In the case before us it appears that the court failed to apply the principles of *Garska v. McCoy, supra,* in making the custody award. There was no finding of which parent was the primary caretaker and, indeed, most of the evidence at the final hearing did not go to the issue of which parent took primary responsibility for the children's care [2] but to the allegedly adulterous behavior of the appellant.

The record clearly indicates that the court did not deny custody to the appellant because she failed to qualify as the primary caretaker but because she was guilty of adultery. Although adultery in some circumstances may be grounds for a

---

1. In Syllabus Point 3 of *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981), we defined primary caretaker as "that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child."

2. The appellant testified that she performed all the cooking, cleaning and bathing of the children. The appellee contradicted this testimony to some degree (he testified that he cooked breakfast for the older child sometimes and also helped bathe him). Mr. Stacy, however, also testified that his former wife took good care of the children prior to the divorce proceedings.

finding of unfitness as a parent, it is not always so. In Syllabus Point 4 of *J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978) we set forth the standard for determining when sexual misconduct should be considered in making a custody award:

> Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral standards, that reasonable men would find that her immorality, *per se*, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

Thus, to be a fit parent a person must, *inter alia*, refrain from grossly immoral behavior under circumstances that would affect the child.[3]

Because the record indicates that the court did not make a finding as to which parent was the primary caretaker and because it appears that the court denied custody to the appellant solely because she was guilty of adultery, without finding that the adultery had any deleterious effect upon the children, the case is reversed. It is remanded with directions that the court apply the primary caretaker rule of *Garska v. McCoy, supra.* If the court finds that the appellant is the primary caretaker but is unfit to have custody of the children for other reasons, those reasons should be clearly and separately stated.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of McDowell County is reversed and remanded for further proceedings consistent with the principles set forth in this opinion. It is also ordered that, because of the hardship any change of custody will cause for the children involved in this case, the case be expedited on the circuit court's docket and the proceeding be concluded within ten days of this order notwithstanding any petition for rehearing in this Court.

Reversed and Remanded.

---

**3.** "[R]estrained normal sexual behavior does not make a parent unfit. The law does not attend to traditional concepts of immorality in the abstract, but only to whether the child is a party to, or is influenced by, such behavior." Neely, "The Primary Caretaker Parent Rule: Child Custody and the Dynamics of Greed." *3 Yale Law & Policy Rev.* 168, 181 (1984).