356 S.E.2d 464

**NANCY VIOLA R.**

v.

**RANDOLPH W. and Grady W.**

**No. 17144.**

Supreme Court of Appeals of
West Virginia.

April 9, 1987.

---

Norman Googel, Welch, Joanne Schulman, Van Nuys, Cal., for appellant.

Abishi C. Cunningham, Welch, for appellee.

Carolyn F. Corwin, Alan Tawshunsky, Covington & Burling, Washington, D.C., Barbara Fleischauer, Morgantown, for amicus curiae.

McHUGH, Justice:

This case is before this Court upon the appeal of Nancy R. from the Circuit Court of McDowell County.[1] Mrs. R. had sought custody of her nephew, Randolph W. II, then age 4. Custody, however, was awarded to the child's paternal uncle, Grady W. The child's father, Randolph W. I, who had been indicted for the first degree murder of the child's mother, had sought to appoint Grady W. as the child's guardian. Mrs. R. also appeals from the denial of her motion to reconsider the court's previous order of custody to Grady W. because of the subsequent conviction of Randolph W. for the

---

1. We adhere to our past practice in styling domestic and juvenile cases which involve sensitive facts and do not utilize the last names of the parties. *See State ex rel. West Virginia Department of Human Services v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181 (1987); *West Virginia Department of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

first degree murder of Alesha W., the child's mother. Randolph W. was sentenced to life in prison with a recommendation of mercy. This Court has before it the petition for appeal, all matters of record and briefs.[2]

## I

At the time of his wife's death on December 14, 1984, Randolph W. had one child, Randolph W. II, who was three years old at the time of his mother's death.[3]

Throughout her six-year marriage, Alesha W. had been the victim of repeated acts of violence and abuse by her husband. She and the child sought refuge on many occasions with members of her family, including the appellant, Nancy R. Two of Alesha's friends testified that Randolph had, on at least two separate occasions, threatened to kill Alesha, the child and himself. On at least two occasions, Randolph had stabbed Alesha, causing her to receive stitches in her arm, finger and breast. When Alesha and their child left Randolph after these assaults, Grady W., the party who has been awarded custody of the child, never contacted or visited Alesha or the child. Prior to her death, Alesha and the child had been separated from Randolph for about four months.

After Alesha's death, the child resided with the appellant, Nancy R., and her three children. Since Alesha's death in 1984, Nancy R. has been the child's primary caretaker and helped him cope with the loss of his mother.

Grady W. has attempted twice to visit the child at the appellant's home during that period. Shortly before Christmas in 1984, he requested that Randolph W. II be allowed to spend Christmas week with his family. Believing it was too soon after the death of the child's mother and that he was still adjusting, the appellant did not permit him to go with Grady; however, she never refused to allow Grady to visit the child. Grady W. made no further attempts to visit the child until April 3, 1985, after Randolph W. had attempted to appoint him as the child's guardian, at which time he went to the appellant's home intending to take custody of the child. Upon the appellant's refusal to let Grady W. take the child, he and Randolph W. sought to obtain custody by filing a habeas corpus petition.

As a result, the appellant filed this custody proceeding. The trial court ruled that both the appellant and Randolph W. were fit, but that Randolph, as the father of the child, was entitled to designate Grady W. as guardian of the child. The child has remained with Nancy R. during the appeal process.

In the criminal case against Randolph W., the jury heard the testimony of several eyewitnesses to the crime. After this testimony had been presented, Randolph W. entered a plea of guilty to first degree murder of his wife. As a result of that conviction, Nancy R. sought a reconsideration of the order granting custody of the child to Grady W.

## II

Because of the trial court's finding that Randolph W. was a fit parent, we must decide whether or not he was a fit parent and whether or not the evidence is sufficient to support that finding.[4]

2. This Court also has before it the brief of amicus curiae filed by the Women's Legal Defense Fund.

Initially, we note that counsel for the appellant urges that Randolph W.'s prolonged incarceration constitutes willful abandonment of his child. Because of our holding in this case, we need not address the abandonment issue, which has far-reaching implications for any parent or guardian who may be incarcerated in a penal institution or becomes a patient in a mental institution.

3. In this case, Alesha W. had designated her son as primary beneficiary and Nancy R. as contingent beneficiary of a $30,000 life insurance policy. The record is unclear as to the use of the proceeds of Alesha W.'s life insurance policy. Counsel for the appellant should ensure that these proceeds are used appropriately for the child, the policy's named beneficiary.

4. We note that this custody dispute is unusual in that in actuality it is not between a natural parent and a third party, but rather between two third parties, the maternal aunt, Nancy R., and the child's paternal uncle, Grady W. However, in resolving this issue, we will look to

This Court has enunciated the standard by which the fitness of a parent is to be judged in several decisions:

'A parent has the natural right to the custody of his or her infant child, and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.' Syllabus, *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d [798] (1969).

Syl. pt. 2, *Hammack v. Wise,* 158 W.Va. 343, 211 S.E.2d 118 (1975). *Accord,* syl. pt. 2, *Collins v. Collins,* 171 W.Va. 126, 297 S.E.2d 901 (1982); syl. pt. 1, *Leach v. Bright,* 165 W.Va. 636, 270 S.E.2d 793 (1980); syllabus, *Whiteman v. Robinson,* 145 W.Va. 685, 116 S.E.2d 691 (1960).

Under the State's child welfare laws, a parent may lose custody of a child to the State Department of Human Services upon a finding that the child has been abused or neglected and upon a finding that the parent is unwilling or unable to provide adequately for the child's needs. *W.Va.Code,* 49–6–5(a)(5) [1984].[5] Furthermore, abuse and neglect proceedings may ultimately result in termination of parental rights pursuant to *W.Va.Code,* 49–6–5(a)(6) [1984] "[u]pon a finding that there is no reasonable likelihood that the conditions of ne-

glect or abuse can be substantially corrected in the near future[.]"

■ Of particular relevance in the case before us is the fact that the legislature has stated expressly that the "conditions of neglect or abuse" which constitute grounds for termination of parental rights include:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol ... to the extent that proper parenting skills have been seriously impaired....

. . . .

(5) The abusing parent or parents have repeatedly or seriously injured the child physically *or* emotionally, ... and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child; ...

*W.Va.Code,* 49–6–5(b)(1) and (5) [1984] (emphasis added).

It is clear from the evidence adduced at the custody proceeding that Randolph W. habitually abused alcohol. During this proceeding, Randolph W. admitted that his drinking habits severely interfered with his personal life. Testimony was also introduced which established that he was continually absent from his home and did not provide adequate support for his family. Thus, there was uncontroverted evidence before the trial court requiring it to find that Randolph W.'s excessive drinking hampered his familial relationships.[6]

established statutory and case law regarding custody, or loss thereof, by parents.

5. The legislative definition of "child abuse and neglect" includes the intentional infliction by a parent, guardian or custodian of a "substantial mental or emotional injury, upon the child...." *W.Va.Code,* 49–1–3(a)(1) and 49–1–3(c) [1984].

6. Attached as an exhibit to the petition for appeal is a psychological evaluation regarding the effects of Randolph W.'s excessive drinking. Although this evaluation and corresponding testimony by the clinical psychologist who prepared it are relevant and probative to this case, neither the evaluation nor the expert testimony was admitted into evidence at the custody hearing.

The trial judge had determined that portions of the evaluation and its corresponding testimony were inadmissible pursuant to *W.Va.R.Evid.* 403. However, the trial court indicated that testimony regarding the appellee's excessive drinking could be admitted into evidence. Nevertheless, when the psychologist who prepared the report was called to testify in that regard, her testimony was excluded from the record.

From our reading of the record, it is unclear why this evidence was excluded. Not having objected on the record regarding this ruling by the trial judge, the appellant failed to preserve this error for appeal. *See W.Va.R.Civ.P.* 46; *Loar v. Massey,* 164 W.Va. 155, 159–60, 261 S.E.2d 83, 86–87 (1979); *Konchesky v. S.J.*

■ In addition to Randolph W.'s abuse of alcohol, we believe that his abuse of his wife is an important consideration in this case. During the marriage of Randolph and Alesha W., she was repeatedly abused. The trial court, however, determined that the only basis for an assertion that Randolph W. was unfit to have custody of his child was the fact that he was under indictment for the murder of his wife.

We have recognized that spousal abuse is a factor to be considered in determining parental fitness for child custody. *Collins v. Collins,* 171 W.Va. 126, 297 S.E.2d 901 (1982). In *Collins,* we upheld the trial court's determination that the appellant had demonstrated violent tendencies that rendered her unfit for custody. The trial court concluded that the appellant had " 'demonstrated [a] tendency to be violent as evidenced by her willingness to threaten with and to actually shoot a deadly weapon at human beings when she was upset, but not in any way threatened.' " *Id.* 171 W.Va. at 127, 297 S.E.2d at 902.

Other courts also regard spousal abuse as an important consideration in child custody cases. *See, e.g., In re Marriage of Cline,* 433 N.E.2d 51, 54 (Ind.Ct.App.1982); *In re Marriage of Ballinger,* 222 N.W.2d 738, 739 (Iowa 1974); *Hosey v. Myers,* 240 So.2d 252, 253 (Miss.1970); *Schiele v. Sager,* 174 Mont. 533, 540, 571 P.2d 1142, 1146 (1977).

The Supreme Court of Iowa reasoned that assaults of a spouse reveal violent tendencies which may render a parent unfit for custody of his or her child. *In re Marriage of Snyder,* 241 N.W.2d 733 (Iowa 1976). In *Snyder,* the court, citing evidence that the father had pulled a gun on his child's mother, reversed the trial judge's finding of fitness. Although there was no indication that the father had ever abused the child, the court awarded custody to the mother, holding that the father's "meanness, aggressiveness, and tendency to[ward] violence expose [the child] to more danger than [the mother's] alleged irre-

sponsibility and moral misconduct." *Id.* at 734. *See also McCurry v. McCurry,* 223 Ga. 334, 335, 155 S.E.2d 378, 380 (1967); *In Re Custody of Williams,* 104 Ill.App.3d 16, 18, 59 Ill.Dec. 791, 793, 432 N.E.2d 375, 377 (1982).

Clearly, the many acts of violence by Randolph W. toward his wife, Alesha, culminating in her death, are directly relevant to the determination of his parental fitness and should have resulted in a finding of unfitness. Undoubtedly, the most convincing evidence of the appellee's unfitness is his conviction of the first degree murder of his wife, Alesha.

■ Following Randolph W.'s conviction and his sentence to the penitentiary for life with a recommendation of mercy, the appellant petitioned the trial court, based upon that conviction, to modify its previous order awarding custody to Grady W. During the hearing on the modification, Nancy R. requested the trial court to incorporate as part of the record in the custody proceeding, the entire transcript and court records of the criminal action, as well as the confession of Randolph W. The court, nevertheless, declined to consider evidence of Randolph W.'s conviction stating that it would not make further findings in this case based on the results of the criminal trial.

The record of Randolph W.'s conviction was specifically pleaded in the appellant's petition to modify the order. *See* syl. pt. 1, *Carper v. Montgomery Ward & Co.,* 123 W.Va. 177, 13 S.E.2d 643 (1941). Furthermore, Nancy R. requested that the trial court incorporate as part of the record in the custody proceeding the record of the criminal case. *Id.* The trial judge recognized that the record of the criminal case would be part of the appeal to this Court. The record of the criminal case should have been admitted as evidence in the custody proceeding or it should have been judicially noticed. *See generally W.Va.R.Evid.*

*Groves & Sons Co.,* 148 W.Va. 411, 415, 135 S.E.2d 299, 302 (1964); *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978). Appellant, in her brief to this Court, now contends that the trial court erred in excluding such pro-

bative evidence pursuant to *W.Va.R.Evid.* 403. However, there is sufficient evidence in the record upon which we can make a determination of Randolph W.'s fitness.

201 [7]; *see also* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12.3(B) at 670 (2d ed. 1986).

This Court has recognized that a parent can be unfit for custody if he or she engages in "grossly immoral behavior under circumstances that would affect the child." *Stacy v. Stacy,* 175 W.Va. 247, 249, 332 S.E.2d 260, 262 (1985). We have further recognized that a parent's conduct may be so outrageous when compared with " 'contemporary moral standards that reasonable [people] would find that [the conduct] warrant[s] a finding of unfitness because of the deleterious effect upon the child['s] being raised by a [parent] with such a defective character.' " Syl. pt. 3, in part, *id.,* quoting syl. pt. 4, in part, *J.B. v. A.B.,* 161 W.Va. 332, 242 S.E.2d 248 (1978).

■ After reviewing the evidence, we conclude that the trial court's finding that Randolph W. was a fit parent is clearly erroneous. A conviction of first degree murder of a child's mother by his father and the father's prolonged incarceration in a penal institution are significant factors to be considered in ascertaining the father's fitness and in determining whether the father's parental rights should be terminated.

The Supreme Court of Illinois, in a case factually similar to the one before us, terminated all parental rights of a father who was found guilty of the first degree murder of the mother of his three-year-old child. *In re Abdullah,* 85 Ill.2d 300, 53 Ill.Dec. 246, 423 N.E.2d 915 (1981). There the court applied an Illinois statute that required a showing of "depravity" in order to terminate parental rights. The court determined that the defendant's premeditated murder of his wife constituted a *prima facie* case of depravity. The court's reasoning is particularly relevant to this case:

Three separate factors in the evidence showed defendant's depravity. First, he was convicted of murder, the most serious criminal offense there is. Few acts could be more inherently deficient in the moral sense or rectitude than the intentional and unjustified killing of a fellow human being. Second, the murder victim was the mother of the child. Defendant thus deprived his son of his mother and further heightened the psychological scarring caused by a family already broken by divorce. Finally, the extended term of imprisonment imposed indicates that the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty.

85 Ill.2d at 306–07, 53 Ill.Dec. at 249, 423 N.E.2d at 918. *See also In re Sarah H.,* 106 Cal.App.3d 326, 329–30, 165 Cal.Rptr. 61, 63 (1980); *In re Geoffrey G.,* 98 Cal. App.3d 412, 420–21, 159 Cal.Rptr. 460, 464–65 (1979).[8]

■ *W.Va. Code,* 49–6–5(a)(6) [1984] provides in pertinent part:

Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, [the court shall] terminate the parental ... rights and responsibilities and commit the child to the permanent guardianship of the state department....

Clearly, there is no likelihood that the conditions of abuse in this case will be corrected in the near future. It is in the best interests of the child that we terminate Randolph W.'s parental rights.

Before a court may terminate parental rights, clear and convincing evidence to support that finding must be produced. *W.Va.Code,* 49–6–2(c) [1984]; *State v. C.N.S.,* 173 W.Va. 651, 656, 319 S.E.2d 775, 780 (1984); *State v. Carl B.,* 171 W.Va.

---

**7.** The *West Virginia Rules of Evidence* became effective on February 1, 1985, and were applicable during the hearing on Nancy R.'s petition to modify the court's previous order which was held on November 19, 1985.

**8.** Other jurisdictions have determined that spousal abuse which results in the murder of a child's parent establishes a *prima facie* case of parental unfitness. *See, e.g., Bramblet v. Cox,* 461 S.W.2d 349, 350–51 (Ky.1970); *In re Welfare of Scott,* 309 Minn. 458, 461–62, 244 N.W.2d 669, 671–72 (1976); *Shoemake v. Davis,* 216 So.2d 420, 421–22 (Miss.1968).

774, 778, 301 S.E.2d 864, 868 (1983); syl. pt. 6, *In Re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). In the case before us, the evidence adduced at the custody proceeding reaches that standard. *Cf. State ex rel. West Virginia Department of Human Services v. Cheryl M.,* 177 W.Va. 688, 356 S.E.2d 181, 188 (1987). Randolph W. had a history of abusing his spouse. That abuse irreparably affected his relationship with his son. Furthermore, his conviction of murder under the circumstances of this case support a finding that his parental rights should be terminated for the welfare of Randolph W. II.

Aside from acts of abuse to the body and mind of a child, first degree murder of a child's parent is the ultimate act of savagery to that child. The emotional and psychological scarring the child has sustained as a result of his mother's death at the hands of his father is no doubt substantial. We can conceive of few circumstances in which the termination of parental rights would be more justified.[9]

■ Where parental rights of a child's father have been terminated because of his conviction of the first degree murder of the child's mother, and other acts of violence to her and threats of violence to the child, permanent guardianship of the child may be given to the West Virginia Department of Human Services. *W.Va.Code,* 49–6–5(a)(6) [1984].

Accordingly, we commit the child to the permanent guardianship of the West Virginia Department of Human Services pursuant to *W.Va.Code,* 49–6–5(a)(6) [1984].

■ Although permanent guardianship is given to the Department of Human Services, we do not believe it would be sound to remove the child from the temporary custody of Nancy R.[10] The trial court below found Nancy R. fit to properly care for the child, and on the state of the record, we agree with that finding. The evidence ad-

duced at the custody proceeding conclusively established that the appellant had been the child's primary caretaker since his mother's death over two years ago. During that time, strong emotional bonds have undoubtedly formed between the two. Nancy R. has obviously been very protective of the child's welfare. *See, e.g., Lemley v. Barr,* 176 W.Va. 378, 386, 343 S.E.2d 101, 109 (1986); *West Virginia Department of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 334–35, 332 S.E.2d 632, 636–37 (1985). We believe that the child's best interests compel a temporary custody award to Nancy R.

For the foregoing reasons, judgment of the Circuit Court of McDowell County is reversed.

Reversed.

---

**9.** Because we have terminated the parental rights of Randolph W., we need not address the issue of whether he, as the child's parent, has the absolute right to designate the child's guardian.

**10.** Nancy R. may seek permanent custody of the child. We note various proceedings to accomplish this, such as the institution of proceedings for subsidized adoption pursuant to *W.Va.Code,* 49–2–17(a) [1978], or adoption pursuant to *W.Va.Code,* 48–4–7 [1984].