395 S.E.2d 509

**Stephen G. MARCUM**

v.

**Vicki L. MARCUM.**

**No. 19253.**

Supreme Court of Appeals of West Virginia.

July 11, 1990.

**266**

Barbara A. James, Huntington, for Vicki L. Marcum.

Herbert H. Henderson, Henderson & Henderson, Huntington, for Stephen G. Marcum.

PER CURIAM:

This is an appeal by Vicki L. Marcum from a custody ruling of the Circuit Court of Cabell County in a divorce proceeding. By that ruling, the trial court refused to grant the appellant custody of her two and one-half year old daughter. On appeal, the appellant claims that there was evidence showing that she had been the primary caretaker of the child and that, in view of the evidence, the trial court erred in failing to award her custody of the child. After reviewing the record, this Court disagrees and affirms the judgment of the Circuit Court of Cabell County.

The appellant and Stephen G. Marcum were married on August 11, 1984. One child was born of the marriage in 1986.

In May, 1988, the parties separated and subsequently entered into a written separation agreement. At the time of entering into the agreement, the appellant was not represented by an attorney. Under the terms of the agreement, the appellant agreed to surrender to her husband custody of the parties' infant daughter, but reserved certain visitation rights.

On June 21, 1988, the appellant's husband instituted an action for divorce in the Circuit Court of Cabell County. In his complaint, he sought, in addition to a divorce from the appellant, temporary and permanent custody of their thirty-month-old infant daughter, and ratification and confirmation of the parties' written agreement. A hearing was scheduled for August 3, 1988, but postponed so that the appellant could obtain an attorney. Subsequently, in September, 1988, after both parties had obtained representation, a hearing was held before a family law master. Following the hearing, on September 27, 1988, the master issued recommendations, which included the recommendation that the custody of the parties' infant daughter be awarded to the appellant's husband. In making that recommendation, the family law master found that prior to separation, neither party had been the "clear cut" primary caretaker of the parties' infant child. The master further noted that the appellant had been involved with another man and that her conduct was:

> ... contrary to the moral fiber of our society and such an influence cannot promote the welfare of this child in any fashion as responsible adult citizens. Surely, this conduct could have waited from June until September. Four months is not too long to wait without moving a new daddy in without the benefit of clergy. I am concerned that members of her family don't see what is wrong with that. Her conduct with Keith Wallace has been open and notorious.

The appellant took exception to the family law master's findings, and the question of custody and the remaining questions in the case were referred to the Circuit Court of Cabell County. The circuit court reviewed the findings of fact and the record in the case and sustained the findings of fact and recommendations of the family law master, and by order dated January 19,

1989, entered a final divorce decree which awarded the appellant's husband custody of the child.[1]

In the present proceeding, the appellant claims that the trial court erred in granting her former husband custody where there were sufficient facts to show that she had been the primary caretaker of the child and where she was not determined unfit to care for the child.

In the course of the proceedings, the evidence relating to who had been the primary caretaker of the child was somewhat conflicting. The appellant testified that during marriage she would pick up her daughter from daycare and make dinner for the family. She then would bathe the child, although her husband also on occasion bathed the child. She testified that she read bedtime stories to the child and rocked her to sleep. She also testified that she had taken her daughter to all pediatric visits and stayed home with her after such visits. On one occasion her husband had gone with the appellant and their child to see a specialist. This visit led to a hospitalization, where the appellant stayed with the child after surgery and her husband returned to work. The appellant testified that she had potty trained the child, disciplined the child, and changed diapers on most occasions, although her former husband also on occasion changed diapers. She testified that she bought the child's clothing, did the laundry, and cleaned the house. There were witnesses who corroborated her testimony.

On the other hand, the appellant's husband testified that both parties would attend to the child in the middle of the night, that both went to the store, that both changed diapers, that both took care of the child after her hospitalization, that both put the child to bed, and that both had taken care of her since they were both working. The appellant's husband indicated that he took care of the child during the evening, gave her baths and got her ready for bed.

He also testified that he took her to the baby sitter every morning. His witnesses corroborated his testimony that he had taken care of the child during the marriage.

In addition to the evidence relating to who was the primary caretaker, the appellant's husband introduced evidence suggesting that it would be in the child's best interest for the court to place custody in him. That evidence indicated that the appellant was dating an individual named Keith Wallace, who, on occasion, spent the night in her home and who had been with the appellant's child. The evidence suggested that Mr. Wallace was an individual of violent propensities who had been arrested on at least six occasions prior to the hearing. Two of the arrests were for assaults, one of which involved a stabbing. Another arrest was for "hit and run" and grew out of a drag race that Mr. Wallace engaged in on a public highway. Still another arrest was on a drug-related charge.

Further evidence in the case indicated that the appellant, at an earlier hearing, had expressed a disinterest in having custody of the child. At that hearing, the appellant insisted that she be granted a divorce immediately, and when the family law master indicated that he could not grant one, the appellant stormed out of the room after asking. In so doing, she asked if a divorce would be granted, and if her husband would be granted custody of the child, if she did not show up at the next hearing. When the family law master responded in the affirmative, the appellant said something to the effect: "Well, by God, I just won't show up."

There was also evidence that on another occasion the appellant had threatened to commit suicide if her husband did not grant her custody of the child. On that occasion the appellant actually obtained a pistol and shot a round into a porch.

In the present proceeding, the appellant suggests that the ultimate decision as to the custody of her infant child was made

1. Following entry of the divorce decree, the appellant petitioned for modification of the court's initial custody award. That petition was denied by order entered on July 6, 1989. In the present appeal, which was filed within eight months of the divorce order, the parties focus on the original custody award.

by the family law master and by the circuit court on the basis of the fact that she was having an affair at the time of the divorce proceeding. She implicitly relies upon this Court's recognition that sexual misconduct is not a proper criterion upon which to base a custody decision where the child is not directly exposed to or affected by the misconduct. *See, e.g., Bickler v. Bickler,* 176 W.Va. 407, 344 S.E.2d 630 (1986); *Stacy v. Stacy,* 175 W.Va. 247, 332 S.E.2d 260 (1985); *J.B. v. A.B.,* 161 W.Va. 332, 242 S.E.2d 248 (1978).

In examining the record, this Court notes that the family law master did make reference to an extramarital affair and apparently was influenced by the fact of the affair, apart from its impact on the child, in making his custody recommendation. The circuit court subsequently adopted the family law master's findings. In so doing, this Court believes that the circuit court and the family law master were misguided.

In spite of this, the real question in this case is whether the trial court erred in awarding custody of the infant child to the appellant's husband based on what is in the best interest of the child.

■ Generally, in custody cases this Court defers to the judgment of lower courts on custody questions, partly due to the fact that lower courts have an opportunity to observe the demeanor of the parties and assess intangible factors which do not appear in an appeal record. As a consequence, the Court has repeatedly indicated that:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

**2.** In the present case, the appellant entered into a separation agreement which stated:

> Unless otherwise ordered by the Court having jurisdiction over the child, Husband shall have the care, custody and control of said child, except that Wife shall have reasonable and seasonable rights of visitation.

Although not essential to the decision in this case, the Court notes that separation agreements

Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977). *See also, Goddard v. Goddard,* 176 W.Va. 537, 346 S.E.2d 55 (1986); *Stone v. Stone,* 173 W.Va. 72, 312 S.E.2d 296 (1984); *Douglas v. Douglas,* 171 W.Va. 162, 298 S.E.2d 135 (1982).

■ It appears that in the present case there was substantial evidence that the appellant's husband was deeply and integrally involved in the care of the infant child before the parties' separation and that afterwards, except when the child was visiting the appellant, he was fully responsible for the care of the child. This evidence, in addition to the evidence that the appellant also provided substantial care to the child, supports the trial court's conclusion that neither party was the primary caretaker of the child.

Although the fact that the appellant was involved with another man was not, in and of itself, a factor which under our law could enter into the custody decision, the fact that the involvement could expose the child to violence or that the involvement could destabilize the appellant or lessen her commitment to the child were potentially factors impacting on the future welfare of the child. There was evidence that the man with whom the appellant was involved had violent propensities, and the appellant on two occasions, in the separation agreement and in an early hearing before the family law master, wavered in her commitment to the child.

Under the overall circumstances of the case, this Court believes that there was evidence from which one could reasonably conclude that the trial court's action was in the best interest of the child. The Court also believes that the record fails to demonstrate that the trial judge abused his discretion by awarding the appellant's husband custody of the parties' infant child.[2]

have been recognized, and, except where they are obtained under inequitable circumstances, or are unfair, unreasonable, or unenforceable, a trial court should attempt to conform relief granted to their provisions. *Lowe v. Lowe,* 179 W.Va. 536, 370 S.E.2d 731 (1988). It appears

For the reasons stated, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

that in the present case the relief granted by the trial court conforms to the agreement.