421 S.E.2d 506

**Michael S. MOSES, Plaintiff Below, Appellee,**

v.

**Brenedah J. MOSES, Defendant Below, Appellant.**

No. 20323.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided July 22, 1992.

Diana Everett, Ruley & Everett, Parkersburg, for appellee.

C. Scott Durig, Goodwin & Goodwin, Parkersburg, for appellant.

PER CURIAM:

In this appeal Brenedah J. Moses challenges a divorce decree awarding custody of her three infant children to her former husband, Michael S. Moses. On appeal, she claims that the circuit court erred in finding that her former husband had been the primary caretaker of the children and in finding that she was unfit to have custody. After reviewing the record, this Court, while not fully agreeing with the findings of the circuit court, affirms the custody award.

The appellant, Brenedah J. Moses, and the appellee, Michael S. Moses, were married on March 19, 1983. At the time of the marriage, Michael S. Moses was a medical student nearing completion of his training. After he completed that training, the parties moved to Charleston, West Virginia, where Michael S. Moses enrolled in a three-year internal medicine residency at the Charleston Area Medical School. Upon completion of that program, the parties moved to St. Louis, where Michael S. Moses spent seven or eight months as a staff physician at an health maintenance organization. The parties then moved to Wood County, West Virginia, where they established a permanent home and where they were living at the time of the institution of this action.

On December 19, 1983, the parties' first child, Bethany Lorraine Moses, was born. Jameel Solomon Moses, the second child, followed on October 27, 1984, and Ruth Anne Moses, the third child, was born on October 29, 1985.

After the parties moved to Wood County, they began experiencing marital problems, and on December 18, 1989, Michael S. Moses instituted the present proceeding by filing a divorce complaint in the Circuit Court of Wood County. The complaint requested, among other things, that he be granted a divorce from the appellant and that he be granted custody of the parties' three infant children. The appellant filed an answer and counterclaim in which she prayed for a divorce and custody of the children.

The case was referred to a special law master for hearings and consideration after the regular family law master for Wood County voluntarily recused herself from participating in the matter. The special master conducted a number of hearings, and substantial evidence was developed upon the issue of custody of the children.

At the conclusion of the hearings, the family law master concluded that the evidence showed that the appellant had been the primary caretaker of the parties' three minor children and that the evidence was insufficient to establish that she was unfit to have custody of the children. The master, therefore, concluded that the appellant should be awarded custody of the children on a permanent basis and that Michael S. Moses, who was also deemed to be a fit parent, should have liberal visitation rights.

Michael S. Moses took exception to the findings of the master, and the findings were submitted to the Circuit Court of

Wood County for review. The circuit court reviewed the record developed before the special family law master and by letter dated November 16, 1990, informed the parties that:

It is clear from the evidence not only that plaintiff [Michael S. Moses] was the primary caretaker and fit to be custodian but also that defendant [appellant] is wholly unfit to be custodian of the children, even if she were properly found to have been the primary caretaker.

The recommendation of the master in respect to the custody of the children is found not in conformance with the law, unsupported by substantial evidence and unwarranted by the facts.

After making these findings, the judge directed that an order be prepared granting a divorce and awarding custody of the couple's three children to Michael S. Moses.

That order was prepared and, on November 30, 1990, it was entered by the circuit court. The order essentially overruled the findings of the special law master concerning the custody of the children and directed that Michael S. Moses have permanent custody of the children. It is from that order that the parties now appeal.

In the present proceeding, the appellant claims that the evidence shows that she was the primary caretaker of the children and that it fails to show that she was an unfit parent. She argues that, in view of these circumstances, she should have been awarded custody of the children. She also claims that the trial court erred in overruling the family law master's findings that she had been the primary caretaker of the children and that she was not an unfit parent.

The parties essentially agree that the legal guidelines for establishing custody are rather clearly set out in *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981). They, however, disagree as to the weight of the evidence and as to the conclusions which should be drawn from that evidence.

In syllabus point 2 of *Garska v. McCoy, Id.*, the Court stated:

With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit.

In syllabus point 3 of *Garska*, the Court proceeds to state that:

The primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child.

In the *Garska* case, the Court, following the principles discussed in *J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978), addressed at some length the factors to be considered in determining which parent has been the primary caretaker. The Court stated:

In establishing which natural or adoptive parent is the primary caretaker, the trial court shall determine which parent has taken primary responsibility for, *inter alia*, the performance of the following caring and nurturing duties of a parent: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning, and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and (10) teaching elementary skills, i.e., reading, writing and arithmetic.

167 W.Va. at 69–70, 278 S.E.2d at 363.

In *Garska*, the Court also recognized the principle set forth in syllabus point 4 of *J.B. v. A.B., supra*, that:

Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral

standards, that reasonable men would find that her immorality, *per se*, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

In the present case, substantial and conflicting evidence was introduced on the question of who had been the primary caretaker of the parties' infant children. The appellant's evidence indicated that during the first four years that the parties had children, she had been the primary caretaker of the children. That evidence indicated that during this period she was with the children all day, every day. Thereafter, when the parties returned to Wood County, she developed certain interests outside the home and became active in an actors guild which entailed her being away from home on a number of nights each week from 5:00 p.m. until the early hours of the morning. There was evidence that she was with the children for a considerable period of time during the day, although on a number of days each month she left the children in day-care.

On the other hand, Michael S. Moses testified that for the two years following the birth of the first child:

I continued to do all of the laundry. Every bit of the laundry. I did a lot of cooking, and took care of the kids on frequent occasions when she was in the Hospital on several occasion[s] with prenatal contractions, premature contractions, so I spent quite a bit of time taking care of the kids then, and taking care of the kids during her deliveries. I would put the kids to bed. I would bathe the kids. I would brush their teeth. I would say, getting to exact numbers, five days out of a week. We then moved to St. Louis. I spent even less time at the office. I went into the office. My office hours started at 8:30 in the morning and I would get home at 3:30 in the afternoon. That was Monday, Tuesday, Thursday and Friday. I got home on Wednesdays at noontime, so I spent more time at home with my kids doing the same duties, the laundry, the cooking, cleaning, yard work.

The appellant's husband testified that after the parties moved to the Parkersburg area he got up with the children every morning, seven days a week and fixed their breakfasts, and in the evenings, while the appellant was at the Actor's Guild, he would feed the children, get them cleaned up, get them in their pajamas, and put them to bed. He also indicated that he took them on rounds with him at the hospital on weekends and took them to church on Sundays. He further coached a little league baseball team, and when he was involved in that activity, he would watch his children in the dugout until the game was over.

Based on this evidence, the acting family law master found that the appellant had been the primary caretaker of the children, and, as previously indicated, the trial court, in examining the same evidence, concluded that she had not been the primary caretaker.

■ This Court has rather consistently recognized that questions relating to the custody of children are within the sound discretion of the trial court and that the trial court's ruling on such questions will not be disturbed on appeal unless it clearly appears that such discretion has been abused. *Marcum v. Marcum*, 183 W.Va. 265, 395 S.E.2d 509 (1990); *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990); *Goddard v. Goddard*, 176 W.Va. 537, 346 S.E.2d 55 (1986); *Stone v. Stone*, 173 W.Va. 72, 312 S.E.2d 296 (1984); *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982); *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977); *State ex rel. Trembly v. Whiston*, 159 W.Va. 298, 220 S.E.2d 690 (1975); and *Witt v. Witt*, 141 W.Va. 43, 87 S.E.2d 524 (1955).

Certainly, in the present case there was abundant evidence that the appellant's husband was integrally involved in the care of the couple's infant children. While the appellant's evidence indicated that during the first four years the couple had children she was with the children constantly, there was evidence that the appellant's husband was also involved in the care of the children.

After the parties became established in Wood County, the appellant became active in an actor's guild and left the children in the care of her husband on many nights. There was also evidence that the appellant's husband prepared the children's breakfasts every morning, that he was involved in picking the children up from school, that he was involved in their religious development, and that he was also involved in their outside play activities. He, on many nights, prepared their dinners and put them to bed.

After carefully weighing all the evidence on who was the primary caretaker of the children, this Court finds that it is contradictory. However, given the fact that the evidence shows that the appellant's husband was so substantially involved with meals, with grooming and dressing the children, with transporting the children, with putting them to bed at night, and with their recreational and religious activities, factors which should all be considered under the guidelines in *Garska v. McCoy, supra,* this Court cannot say that the evidence clearly shows that the trial judge abused his discretion in finding that the appellant's husband was the primary caretaker of the children and in finding that he was fit to have custody of them. Under such circumstances, syllabus point 2 of *Garska* indicates that it should be presumed that it is in the best interests of the children that the appellant's husband receive custody of them.

The Court notes that the trial court also found that the appellant was unfit to have custody of the children. This finding was apparently predicated upon the trial court's finding that the appellant was a poor housekeeper, that she had abused alcohol and marijuana, and that she had been involved in an extramarital sexual relationship.

The evidence relating to the appellant's housekeeping performance was essentially conflicting. While witnesses for her husband suggested that she allowed filthy conditions to develop, other witnesses suggested that the house was in simple disarray due to the presence of small children.

There was evidence that the appellant had a housekeeper and that her detailed instructions to her housekeeper about areas to be cleaned showed that the appellant had an understanding of, and desire for, cleanliness.

While the evidence showed that the appellant admitted that she had used marijuana and alcohol, the testimony relating to the extent of her use was conflicting and to some extent suggested that her use was experimental and incidental rather than regular or serious. There was no evidence that she used marijuana or drank in the presence of the children.

During the proceedings in the case, the appellant admitted that she had engaged in acts of infidelity during her marriage, but there was no evidence that any of the acts had been committed in the presence of or in a manner which was deleterious to the children.

As indicated in *J.B. v. A.B., supra,* in a domestic custody situation the focus of an examination of a parent's conduct is not normally on whether the conduct is morally pure, but upon whether the conduct has a deleterious effect upon the children.

In the present case, where there is no evidence that the appellant's conduct had a deleterious effect on the children, the Court, in line with *J.B. v. A.B., supra,* does not believe that it should be a factor affecting her fitness. Further, the Court believes that the overall evidence fails to show that the appellant is unfit to have custody of the children.

The Court further notes that the trial court's only ruling as to visitation was to grant the appellant "the right ... to visit with said children at all reasonable and seasonable times." This Court believes that it would be in the best interests of the children for them to maintain an ongoing relationship with the appellant, their mother, and that the appellant's right to visitation should be more fully defined.

From representations made to this Court during oral argument, it would appear that since the trial court's ruling in this case the

appellant has moved to North Carolina or some other place distant from the children's place of residence. This distance will surely be an impediment to visitation. It appears that there is an obvious disparity in the parties' financial means and that there is a substantial possibility that a lack of financial means will prevent the appellant from fully and liberally exercising her right to visit the children, to their obvious detriment.

In view of these circumstances, and in view of the fact that there was a substantial conflict in the findings of the law master and the trial judge, this Court believes that this case should be remanded to the trial court for hearings and further proceedings to define more precisely the appellant's visitation rights. During such proceedings, the trial court should explore the financial positions of the parties and make such rulings as will insure that the appellant will have actual and meaningful visitation with the children. Such rulings might include the directive that Michael S. Moses pay all reasonable travel costs necessary to insure liberal visitation.

As previously indicated, the Court has concluded that the evidence fails to show clearly that the trial judge abused his discretion in finding that the appellant's husband was the primary caretaker of the children and that he was fit to have custody of the children. Under the circumstances, the Court cannot conclude that the trial court erred in awarding custody of the infant children involved in this case to the appellant's husband.

The judgment of the Circuit Court of Wood County relating to custody is, therefore, affirmed, and in line with the remarks contained herein, this case is remanded to the circuit court with directions that further proceedings be conducted to define the appellant's visitation rights and to insure that the appellant is able to exercise those rights in a meaningful manner.

Affirmed, but remanded with directions.