433 S.E.2d 536

Timothy Fred LEWIS, Defendant
Below, Appellant,

v.

Kathy F. LEWIS, Plaintiff
Below, Appellee.

No. 21491.

Supreme Court of Appeals of
West Virginia.

Submitted May 11, 1993.

Decided July 16, 1993.

---

**6.** *See supra,* note 1.

**600**

William W. Talbott, Webster Springs, for appellant.

Jack Alsop, Webster Springs, for appellee.

PER CURIAM:

This is an appeal by Timothy Fred Lewis from a June 15, 1992, order of the Circuit Court of Webster County through which the lower court awarded custody of the Appellant's infant child to the child's mother, Appellee Kathy F. Lewis. The Appellant contends that the lower court erred by failing to follow the recommendation of the family law master that the Appellant was the primary caretaker of the child and should be awarded custody. We agree with the contentions of the Appellant and reverse the determination of the lower court.

### I.

The Appellee instituted a divorce action in Webster County against her husband, Appellant Timothy Fred Lewis, alleging mental cruelty and irreconcilable differences as grounds for the divorce. The Appellant counterclaimed, alleging adultery and denying that irreconcilable differences existed. Both parents claimed to be the primary caretaker of their daughter, Amber Dawn Lewis, born May 18, 1987. A hearing was held on July 30, 1991, before Family Law Master Jeffrey Hall, and temporary custody was awarded to the Appellant by order dated August 8, 1991. In that order, the family law master concluded that the Appellant was the primary caretaker of Amber and was entitled to the temporary care, custody, and control of the child.

Subsequent to an October 18, 1991, final hearing, the family law master explained the following:

> After consideration of all of the evidence, both that of the plaintiff and that of the defendant, the undersigned finds that the defendant [Appellant] is the primary caretaker of the infant child of the parties, and it is in the best interest of said child that she remain in the custody of the defendant. It is, therefore ORDERED that the defendant shall have the permanent care, custody and control of Amber Dawn Lewis....

The Appellee filed exceptions to the family law master's finding regarding the child's primary caretaker and his additional finding that it was also in the best interest of Amber to remain with her father. During a hearing before the circuit court on the exceptions to the family law master's ruling, the circuit court directed the parties to provide him with briefs on the law regarding the primary caretaker determination. By letter dated June 10, 1992, the circuit court concluded as follows:

> The parties hereto cite to the Court excellent authority for their respective positions. The Court has thought long and hard about this case. The situation the mother now finds herself in does not add any weight to her argument.
>
> However, the initial reaction of this Court to the question of custody has been thought and re-thought, and this Court cannot escape the conclusion that a small child, especially a female child, should be in the custody of that child's mother. Call it 'best interests', [c]all it 'polar· star', call it anything you may, that is how this Court views the situation.

By order entered June 15, 1992, the lower court granted custody to the Appellee.

The Appellant contends that the family law master's determination that he was the primary caretaker was correct and should have been adopted by the lower court. The transcript revealed that the Appellee had been steadily employed since the birth of the child, while the Appellant had remained home with the child for significant portions

of time. The Appellant testified that the only time he did not perform primary caretaker duties was during an approximate six-month period while Amber was two and one-half to three years of age when the Appellant was working in North Carolina. The Appellee admitted that the Appellant cared for the child while she worked, and the Appellant testified to having performed such caretaking tasks as preparing bottles, changing diapers, cooking, bathing, washing clothes, etc.

## II.

■ We have repeatedly held that the custody of children of tender years should be awarded to the primary caretaker of those children. We stated the following in syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981): "With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." In syllabus point 3 of *Garska*, we further explained that "[t]he primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child." *Id.* at 59, 278 S.E.2d at 358.

■ We also enunciated several duties which are encompassed within the definition of primary caretaker. These include such basic caretaking duties as preparation of meals, grooming, medical care, discipline, and education.[1] *Id.* at 69–70, 278 S.E.2d at 363. Subsequent to a determination of the party entitled to primary caretaker status, a presumption in favor of that primary caretaker attaches, and the pri-

mary caretaker is entitled to custody absent a showing that he or she is unfit. *Id.* at 70, 278 S.E.2d at 363.

■ In syllabus point 5 of *Garska*, we explained: "If the trial court is unable to establish that one parent has clearly taken primary responsibility for the caring and nurturing duties of a child neither party shall have the benefit of the primary caretaker presumption." *Id.* at 59, 278 S.E.2d at 358. Thus, where both parents have shared the primary caretaker duties equally or have divided the duties in such a manner that neither has assumed the primary responsibility, neither party will be afforded the presumption of primary caretaker. In such case, an analysis must be based upon the best interests of the child, "and the court must proceed to inquire further into relative degrees of parental competence." *Id.* at 70, 278 S.E.2d at 363.

■ Subsequent to the *Garska* decision, we have revisited the primary caretaker issue and have elaborated upon its requirements. In syllabus point 4 of *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989), for instance, we explained:

> In West Virginia we intend that generally the question of which parent, if either, is the primary caretaker of minor children in a divorce proceeding is proven with lay testimony from the parties themselves and from teachers, relatives and neighbors. In most cases, the question of which parent does the lion's share of the chores can be answered satisfactorily and quickly. Once the primary caretaker has been identified, the only question is whether that parent is a 'fit par-

---

**1.** Examples of the duties of a primary caretaker set forth in *Garska* were as follows:
    (1) preparing and planning of meals;
    (2) bathing, grooming and dressing;
    (3) purchasing, cleaning, and care of clothes;
    (4) medical care, including nursing and trips to physicians;
    (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings;
    (6) arranging alternative care, i.e. babysitting, day-care, etc.;
    (7) putting child to bed at night, attending child in the middle of the night, waking child in the morning;
    (8) disciplining, i.e. teaching general manners and toilet training;
    (9) educating, i.e. religious, cultural, social, etc.; and,
    (10) teaching elementary skills, i.e., reading, writing and arithmetic.
167 W.Va. at 69–70, 278 S.E.2d at 363.

ent.' In this regard, the court is not concerned with assessing relative degrees of fitness between the two parents such as might require expert witnesses, but only with whether the primary caretaker achieves a passing grade on an objective test.

■ The Appellee attempts to justify the lower court's decision by arguing that the lower court found that the caretaking duties were equally divided between the two parents and that the best interests of the child would be served by placing her in the custody of her mother. Our review of the record discloses no such specific finding. The primary basis for the lower court's decision was apparently its concern that a female child should be in the custody of her mother. "Call it 'best interests', [c]all it 'polar star', call it anything you may, that is how this Court views the situation." That comment by the lower court and the decision regarding custody demonstrates a grave misconception of our pronouncements regarding the appropriate mechanism for determining custody. The primary caretaker presumption allows a family law master or circuit court to benefit from a specific formula for determining custody. The presumption is not without its limitations and admittedly requires some degree of discretion and subjective judgment by the deciding entity. The presumption does not, however, permit such a unilateral, gender-based judgment as made by the lower court in the present case. The lower court made no apparent attempt to employ the primary caretaker formula to arrive at a conclusion. It simply based its decision on its own individualized, preconceived notion of the mother as the proper caretaker of a child.

The findings of the family law master indicated that the Appellant was the primary caretaker of the child and recommended that he be given custody.[2] We find nothing in the record to contradict that conclusion; we do not, howev~r, wish to completely circumvent the discretion of the lower court since it is that court, having the parties actually before it, which often is in a unique position to make such important judgments. Nor would we want to imply that the primary caretaker determination should ever be made in so rote a fashion that the emotional/nurturant aspect of parenting should be ignored. We therefore remand this matter with specific instructions that the lower court ascertain which of the parents, if either, is the primary caretaker.

■ As we explained in syllabus point 1 of *David M.*,

'The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused[;] however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.' Syllabus Point 2, *Funkhouser v. Funkhouser*, 158 W.Va. 964, 216 S.E.2d 570 (1975). *Id.* at 58, 385 S.E.2d at 913. We caution the lower court upon remand to refrain from basing its conclusions on such unsteady ground as its own opinion that a

**2.** The Family Law Master did indicate on the record at the conclusion of the final hearing that he did feel some discomfort at making this recommendation. However, there is nothing in the record which would indicate that such discomfort was rooted in any concern that the father would not be a proper custodian, but perhaps more as a result of a desire not to penalize the mother because she worked more steadily than the father. The Appellee testified that she had been steadily employed during most of the marriage; that her husband had cared for the child; and that the traditional roles of mother and father were reversed. However, nothing in the evidence would seem to indicate any deficiency in the father as a nurturant parent. The Appellee even stated that if Amber were given a choice of living with her mother or her father, she would probably choose her father. When the Appellee's sister, called by the Appellee as a witness, was asked for her opinion regarding the best custody resolution, she answered, "I don't know, I would like to see Kathy have custody of her, but you know, I don't, I will not say." Thus, while the custody decision is to be based upon the primary caretaker analysis, we recognize that in this particular instance, an award of custody to the father based upon such an analysis would also be in accordance with the best interests of the child.

female child should always be in the custody of her mother. This Court has endeavored to provide lower courts with a myriad of factors to be considered in making the difficult primary caretaker determination. We instruct the lower court to limit its discretion to the factors previously enunciated and to avoid any tendency to rely on its personal convictions regarding the proper placement of a female child.

Reversed and remanded.