449 S.E.2d 75

**Ralph W. RHODES, Plaintiff Below, Appellee,**

v.

**Elizabeth Kessel RHODES, Defendant Below, Appellant.**

No. 21995.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1994.

Decided July 15, 1994.

Charles A. Riffee II, Caldwell, Cannon–Ryan & Riffee, Charleston, for appellee.

R. Joseph Zak, Charleston, for appellant.

PER CURIAM:

This is an appeal by Elizabeth Kessel Rhodes (hereinafter "the Appellant") from an order of the Circuit Court of Jackson County granting custody of her two children to their natural father, Ralph W. Rhodes (hereinafter "the Appellee"). The Appellant contends that the lower court erred by failing to adopt to recommendations of the family law master, by failing to find that she was the primary caretaker of the children, and by awarding custody of the children to the Appellee. We reverse and remand for the entry of an order awarding custody of both children to the Appellant with liberal visitation rights to the Appellee.

1. The Appellant was employed as a speech therapist for an American school whose students were children of military personnel as well as civilian governmental personnel. She was not employed during the summer months.

I.

On April 27, 1991, the Appellee filed a divorce complaint and sought custody of the parties' two children, Trevor, born July 14, 1983, and Cara, born April 3, 1986. During August 1991 hearings before Family Law Master Anita Ashley, evidence regarding the caretaking duties of the two parents was introduced. According to the testimony of the parties, it appears that the Appellant had assumed the role of primary caretaker during the first few years of the children's lives, staying home with the first child while the Appellee worked in the oil and gas business. Approximately two years after the birth of the first child, the Appellant obtained part-time employment as a speech therapist. She also taught dance until the birth of the second child in April 1986. When the second child was five months of age, the Appellant returned to work part-time, but she was not employed during the summer months.

In October 1988, the parties were forced into bankruptcy and agreed that the Appellant should seek employment with the United States Department of Defense. Both parties understood that such employment would require the family to live in Germany.[1] Thus, in August 1988, the Appellant traveled to Germany to begin employment, and her husband and children joined her in Germany in September 1988. Because the Appellant was employed while the family resided in Germany and the Appellee was unemployed,[2] the family law master found that the Appellee father was the primary caretaker of the children while the family resided in Germany.

Pursuant to a June 15, 1990, separation agreement, the Appellant was to have custody of the children until March 1, 1991, at which time the issue would be readdressed and an agreement would be reached. Subsequent to the execution of the separation agreement, the family returned to the United States during the summer of 1990, and the

2. The Appellee was employed for a portion of the time he spent in Germany. He worked as an insurance salesman, did volunteer work at the Army Community Service Center, and served as a substitute teacher at a local high school.

Appellant and the children returned to Germany in the fall of 1990. The children then resided exclusively with their mother in Germany until April 1991.[3] At that time, the Appellee traveled to Germany, obtained the children's passports and the Appellant's passport from a locked cabinet in the school where the Appellant was employed, and left Germany with the children without advising the Appellant. The Appellant's passport was returned to her several weeks later, and she returned to the United States to be with the children at the conclusion of her school year, during the summer of 1991.

Subsequent to the August 1991 hearings before the family law master, temporary custody of the children was awarded to the Appellant, and she and the children returned to Germany for the 1991–92 school year. Thus, the children resided exclusively with their mother from August 1991 through June 1992 when they returned to the United States with their mother for summer vacation. After the vacation, the three again returned to Germany from August 1992 through May 1993.

Meanwhile, the Appellee filed exceptions with the lower court, and a hearing on such exceptions was held February 4, 1992. The Appellee filed a rule to show cause with this Court to obtain a ruling from the lower court, and the lower court then issued an opinion. That opinion, rendered on May 27, 1993, declined to adopt the recommendations of the family law master and awarded custody of both children to the Appellee. The primary basis for the lower court's decision appears to be that the lower court deemed it inappropriate for young children to be raised by only one parent in a foreign land. Specifically, the lower court explained as follows:

Further, the children in Jackson and Monongalia Counties[4] would not be in a foreign land where they are surrounded by persons speaking foreign language with different mores and customs. The Court finds that this, alone, i.e., living in a foreign land with one parent with no other relatives is a stressful situation and not conducive to the children's well-being.

## II.

We have repeatedly explained the approach to be employed in a child custody determination. In syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981), we stated that "[w]ith reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." In syllabus point 3 of *Garska*, we defined primary caretaker as that "natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child." *Id.*, 278 S.E.2d at 358.

In addressing the primary caretaker issue in *Garska*, we enumerated several duties which would typically be performed by the primary caretaker. These include preparation of meals, grooming, medical care, discipline, and education.[5] *Id.* at 69–70, 278 S.E.2d at 363. It is the parent who assumed these childrearing duties who is to be awarded custody. Only if neither parent is entitled to the primary caretaker presumption does

---

3. The Appellee traveled to Germany during Christmas 1990 and spent several weeks with the family.

4. The Appellee intends to enroll in graduate school at West Virginia University in Monongalia County.

5. In *Garska*, we set forth several specific duties, as follows:

(1) preparing and planning of meals;
(2) bathing, grooming and dressing;
(3) purchasing, cleaning, and care of clothes;
(4) medical care, including nursing and trips to physicians;

(5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings;
(6) arranging alternative care, i.e. babysitting, day-care, etc.;
(7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning;
(8) disciplining, i.e. teaching general manners and toilet training;
(9) educating, i.e. religious, cultural, social, etc.; and,
(10) teaching elementary skills, i.e., reading, writing and arithmetic.

167 W.Va. at 69–70, 278 S.E.2d at 363.

the court endeavor to determine which placement would be in the best interests of the child. *Id.* at 70, 278 S.E.2d at 363.

In the present case, both parties are certainly fit caretakers of the children; however, the evidence supports the family law master's conclusion that the Appellant has been the children's primary caretaker for a majority of their lives. It was only during a relatively brief period in Germany, while the father was unemployed, that he could be characterized as the primary caretaker.[6] According to the testimony of various witnesses at the hearings, the Appellant performed most of the primary caretaker duties. A witness for the Appellant, Jacqueline Bailey, testified that she was a nursery school teacher in Ripley, West Virginia, and that she had observed the Appellant making arrangements for the transportation and registration for nursery school. Even the Appellee testified that the Appellant assisted the children with homework, put them to bed, and assisted them in extracurricular activities. Another witness for the Appellant testified that the Appellant performed most of the childcare duties and that she was the primary caretaker of the children. A babysitter for the children testified that it was the Appellant who made the initial contact for babysitting services, conducted the interview, and handled any daily problems.

Mrs. Kathy Chandler, sister of the Appellee, testified that the Appellee spent more nurturing time with the children. She was a frequent guest in the parties' home and testified that she had ample opportunity to observe the parties and their interactions with the children. The Appellant's mother testified that both parties participated in childrearing duties, that the Appellant prepared most of the meals, and that the Appellee would do grocery shopping and bathing of the children.

Based upon our review of the record, we conclude that the family law master's determination of the primary caretaker status of these individuals was correct. The family law master was in the unique position to hear the evidence presented and to assess the credibility of the witnesses. The lower court did not have that opportunity and apparently based its opinion primarily upon the concern for the children's well-being in Germany. We do not accept this concern as the proper basis for an award of custody under this particular set of circumstances. In the absence of more appropriate grounds for the lower court's failure to adopt the findings of the family law master, we find the lower court's conclusion to be in error. Thus, we reverse the decision of the lower court and remand for the entry of an order awarding custody of these children to the Appellant, with liberal visitation rights to be granted to the Appellee. At oral argument, counsel for the Appellant indicated that the Appellant planned to return to West Virginia every summer and had no objection to the Appellee continuing to have extensive summer visitation. Both these parties have demonstrated a high degree of interest in and devotion to their children. An effort must now be made to foster and facilitate a continued close relationship between the children and their father. That is difficult and inconvenient in any divorce, but even more so in the instant case where so much geographical distance separates them.

Reversed and remanded with directions.

6. Even during the time the Appellee was unemployed in Germany, the children were not exclusively in his control. The oldest child, Trevor, would routinely ride to school with his mother, attend classes at the school where she was employed, and return home with her. The Appellee did transport the younger child to kindergarten.