455 S.E.2d 570

**MARILYN H., Plaintiff Below, Appellee,**

v.

**ROGER LEE H., Defendant Below, Appellant.**

**No. 22511.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided Feb. 21, 1995.

202

Andrew S. Nason, Pepper & Nason, Charleston, for appellant.

Anthony G. Halkias, Desiree Halkias Haden, Shuman, Annand & Poe, Charleston, John I. Rogers, II, Rogers & Melody, Keyser, for appellee.

PER CURIAM:

This action is before this Court upon the appeal of the appellant, Roger Lee H.,[1] from the final order of the Circuit Court of Mineral County, West Virginia, entered on March 17, 1994. Pursuant to that order, the circuit court adopted the recommendation of the family law master that custody of the H. children be given to the appellant's former wife, Marilyn H., the appellee. We granted a motion for leave to move to reverse filed by the appellant. *W.Va.R.App.P.* 9(f); *W.Va. Code,* 58–5–25 [1931]. This Court has before it all matters of record and the briefs and argument of counsel. For the reasons set forth below, the final order of the Circuit Court is affirmed.

---

**1.** As is our practice in cases involving sensitive matters, we use initials to identify the parties rather than full names. *See In re Scottie D.,* 185 W.Va. 191, 406 S.E.2d 214 (1991).

## I

The appellant and the appellee were married in the State of Maryland in 1981 and, thereafter, became residents of Mineral County, West Virginia. Two children were born of the marriage, Jason, born September 12, 1985, and Caitlin, born March 1, 1990. The marriage deteriorated, and in September, 1991, the parties separated. In October, 1991, Marilyn H. filed a complaint for divorce in Mineral County. In that complaint and an amended complaint, she sought custody of the H. children. Temporary custody of the children was given to her by the family law master.

As the record demonstrates, the litigation between the parties concerning divorce and custody issues was extensive. That litigation evolved, however, into a concern about the involvement of the appellee with a man by the name of Daniel K. Daniel K. was married and had two children. He separated from his wife in September, 1991 as did the parties herein. The record indicates that, a year later, the appellee and Daniel K. had a child. The appellee and Daniel K. moved from the Mineral County area to Illinois and presently reside in Doylestown, Pennsylvania. The appellee and Daniel K. are now married.

During his first marriage and while living in the South Point, Ohio, area, Daniel K. was *convicted of the offense of indecent exposure.* Essentially, in October, 1984, Daniel K., in an automobile, accosted a high school age girl walking on the street, exposed himself, and drove off. Daniel K. engaged in that type of conduct approximately six times, all within a relatively short time period. After his conviction, Daniel K. was placed upon probation and ordered to attend counseling. Daniel K. attended counseling for several months, and by letter dated April 26, 1985, The Holistic Health Center, Inc. reported that Daniel K. "successfully resolved the issues of depression and unhappiness that seemed to have led to his maladaptive behavior ... [and] it is our recommendation that therapy be terminated due to the psychological issues having been resolved." Daniel K. has stated that he has engaged in no further inappropriate behavior.

In the course of this litigation, several psychological and other reports were received with regard to Daniel K. and the children of both families. One of the principal reports is a home study concerning the appellee and the H. children. That report, dated February 4, 1993, was ordered by the family law master and was made by the Allegheny County Department of Social Services, Cumberland, Maryland. The Maryland authorities conducted a police background check of Daniel K. with respect to the State of Maryland and interviewed him concerning the indecent exposure incidents. The Maryland home study concludes:

> One of our only concerns regarding Mrs. [H.] is her relationship with Mr. [K.]. At this time, we do not have access to information that would prevent him from being a suitable person in the household. However, Mr. [H.] has continued to cause considerable problems for Mrs. [H.], Mr. [K.] and the children. Because of the stressful situation between Mr. an Mrs. [H.] that is not anticipated to end soon, we would recommend family therapy for Mrs. [H.], Mr. [K.] and the children if the children continue with her.... Mrs. [H.] and Mr. [K.] appear to have a stable relationship that has weathered the difficulties in her divorce. Both Mrs. [H.] and Mr. [K.] are committed to providing a home and positive family life for all of the children. We have no evidence that this home would not be a positive place for the children to live.

It should be noted that in addition to the indecent exposure incidents, the appellant and Daniel K.'s former wife have asserted that Daniel K. sexually abused his own children on at least three occasions, by touching his son in an improper manner and by improperly hugging and threatening his daughter. Those assertions, however, originated contemporaneously with the breakup of the Daniel K. marriage, and his former wife did not file complaints concerning those incidents. Moreover, the Maryland authorities stated that they were contacted by the appellant's attorney and informed that Daniel K. was under investigation for sexual abuse in West Virginia. As stated in the Maryland home study: "We contacted the West Virgi-

nia Department of Health and Human Resources on 1/28/93. We were informed that the case was closed and they had never actually opened an investigation."

## II

In his findings of fact, conclusions of law and recommended order to the circuit court, the family law master on July 29, 1993, found that the appellee was the primary caretaker of the H. children and is a "fit and proper person to have custody" of those children. Specifically, the family law master indicated that, but for her relationship with Daniel K., the appellant admitted that the appellee was a fit and proper person to have custody of the children. The family law master particularly emphasized the Maryland home study.

By order entered on March 17, 1994, the circuit court adopted the recommendations of the family law master. However, the circuit court stated that a review of the Maryland home study was not called for, since the appellee had moved to Illinois. The circuit court concluded:

> Although this Court, based upon the examination of the matters presented through family law master hearings, has some reservations pertaining to contacts that the minor children of the parties to this civil action might have with one Daniel [K.], considering his prior conduct and his most probable relationship as a step-parent to these minor children, and as concerns any possible control he might exercise over his relationship with their mother and them in a living situation, the Court believes that there is testimony and information presented that he is not a danger or improper person to be living in a residential situation with the minor children.

In his appeal from the March 17, 1994, order, the appellant contends that the relationship of the appellee with Daniel K. rendered her unfit to have custody of the H. children, and, at least, the circuit court should have remanded the case to the family law master to develop more information concerning the impact of Daniel K. upon the H. children. Also, the appellant contends that the circuit court committed error in failing to establish a sufficient visitation schedule for the appellant and the H. children.

## III

A recommended order of a family law master is reviewable by a circuit court pursuant to statute, *W.Va. Code,* 48A–4–16 [1993], *W.Va. Code,* 48A–4–20 [1993], and pursuant to this Court's *Rules of Practice and Procedure for Family Law.* As stated in *W.Va. Code,* 48A–4–20(c) [1993]: "The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master...."

In turn, the final order of a circuit court in such cases is reviewable by this Court, and as we initially announced in the syllabus point of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977): "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." That principle has been repeated many times by this Court and recently in syllabus point 8 of *White v. Williamson,* 192 W.Va. 683, 453 S.E.2d 666 (1994). It has also been stated in cases reviewing circuit court decisions which involved the family law master system. Syl. pt. 3, *Sellitti v. Sellitti,* 192 W.Va. 546, 453 S.E.2d 380 (1994); *Moses v. Moses,* 187 W.Va. 755, 758, 421 S.E.2d 506, 509 (1992); syl. *Marcum v. Marcum,* 183 W.Va. 265, 395 S.E.2d 509 (1990).

With regard to custody issues, this Court held in syllabus point 2 of *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981): "With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." Syl. pt. 1, *Simmons v. Comer,* 190 W.Va. 350, 438 S.E.2d 530 (1993); syl. pt. 1, *Lewis v. Lewis,* 189 W.Va. 598, 433 S.E.2d 536 (1993). *See also* Andrea G. Nadel, Annotation, *Primary Caretaker Role of Respective Parents as Factor in Awarding Custody of Child,* 41 A.L.R. 4th 1129 (1985), discussing *Garska.* However, we later recognized in

syllabus point 3 of *Allen v. Allen,* 173 W.Va. 740, 320 S.E.2d 112 (1984) that "[t]he primary caretaker presumption is rebuttable and may be overcome if the primary caretaker is shown by a clear preponderance of the evidence to be an unfit person to have custody of a child of tender years." In particular, we held in syllabus point 5 of *David M. v. Margaret M.,* 182 W.Va. 57, 385 S.E.2d 912 (1989):

> To be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child. In this last regard, restrained normal sexual behavior does not make a parent unfit.

█ In this appeal, the appellant acknowledges that the appellee generally meets the factors listed above of *David M.* The appellant indicated in his testimony before the family law master that the appellee was a good mother to the H. children. The family law master found that the appellant admitted that the appellee was a fit and proper person to have custody of the children, but for her relationship with Daniel K. Both the family law master and the circuit court found that the appellee's relationship with Daniel K. would have no deleterious effect upon the H. children.

There is no evidence in the record that Daniel K. engaged in acts of indecent exposure after 1984. Moreover, the evidence of sexual abuse by Daniel K. of his own children, although somewhat substantiated by Dr. Charles Cantone, a psychologist, was conflicting, unsupported by other reports and studies in the record, and rejected below. In his testimony before the family law master, Daniel K. denied those allegations, and the appellee testified that she had no fear or concerns with regard to Daniel K. being present around the H. children. The family law master and the circuit court concluded that the appellee should have custody of the H. children.

This action is unlike the circumstances in *Richardson v. Richardson,* 187 W.Va. 35, 415 S.E.2d 276 (1992), and *Marcum v. Marcum,* 183 W.Va. 265, 395 S.E.2d 509 (1990), in both of which cases this Court affirmed that the father should be awarded custody of the children. In both cases, the mother had become involved with another man who had violent propensities toward the children, and there was evidence that the mother was unconcerned or disinterested toward her children. Significantly, this Court in *Richardson* and *Marcum* emphasized the fact-finding process below. As we stated in *Marcum:* "Generally, in custody cases this Court defers to the judgment of lower courts on custody questions, partly due to the fact that lower courts have an opportunity to observe the demeanor of the parties and assess intangible factors which do not appear in an appeal record." 183 W.Va. at 268, 395 S.E.2d at 512.

█ Nor do we find dispositive the circuit court's decision to not review the Maryland home study. The record in this action is extensive and contains a number of reports and studies concerning Daniel K. and the children of both families. The Maryland home study was considered by the family law master, and the family law master had before him other matters of record, including the testimony of several witnesses. In *Rhodes v. Rhodes,* 192 W.Va. 14, 449 S.E.2d 75 (1994), this Court observed that a family law master is in a "unique position to hear the evidence presented and to assess the credibility of the witnesses." 192 W.Va. at 17, 449 S.E.2d at 78.

Cases involving the custody of children are among the most difficult cases sought to be resolved by our court system. Not only does this Court depend upon the family law master, circuit judge and other court personnel in such cases, this Court also depends upon the attorneys, particularly where sexual abuse is alleged, to see that appropriate action is taken promptly and "with attention to detail" to resolve the conflict, in the best interests of the children. *See* n. 11, *Mary D. v. Watt,* 190 W.Va. 341, 438 S.E.2d 521 (1992). In *In the Interest of Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991), we recognized that "[u]njustified procedural delays wreak havoc on a child's development, stability and security." 185 W.Va. at 624, 408

S.E.2d at 376. Indeed, Kenneth Truitt, a social worker, concluded in this case that "a decision regarding the living situation of the children [should] be rendered swiftly to stabilize the relationship between the children and their parents." The attorneys who argued this appeal are not the same attorneys who represented the parties below. This custody dispute has been unresolved since 1991, and the attorneys below, as this Court indicated during argument, have let the issues grow cold. Quicker action by those attorneys would have better served these young children.

Finally, the record indicates that the appellant's issue concerning visitation has been resolved. On May 25, 1994 after the final order before this Court, the circuit court entered an "Agreed Revised Visitation Order" which relates to the appellee's current location in Doylestown, Pennsylvania.

For the reasons set forth below, the final order of the Circuit Court of Mineral County, entered on March 17, 1994, is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.