PAINTER MOTORS, INC.

*v.*

CLETIS HIGGINS

*v.*

INTERNATIONAL HARVESTER CREDIT CORPORATION, *et al.*

(No. 12910)

Submitted September 14, 1971. Decided December 17, 1971.

*William W. Talbott,* for appellant.

*James C. Evans,* for appellees (International Harvester Credit Corp.).

CAPLAN, PRESIDENT:

This is an appeal from a final order of the Circuit Court of Randolph County, West Virginia entered on April 14, 1969, wherein the court refused to set aside its judgment order of March 27, 1969. In an action instituted in that court the plaintiff, Painter Motors, Inc., sought to recover from the defendant, Cletis Higgins, a sum of money which it alleged was due it as a deficiency in a forced sale of a vehicle. International Harvester Credit Corporation,

hereinafter sometimes called International, which financed the purchase of the truck, was a third-party defendant, having been made so by defendant Higgins on the assertion that it had wrongfully converted the vehicle involved in this proceeding.

The plaintiff and defendant entered into a contract dated April 8, 1964, under the terms of which the defendant was to purchase a specially built truck designed to haul twenty-five tons of coal. Under this agreement the defendant was to receive $6,575.00 as trade-in value on a truck which he owned, but upon which the bank had a lien. For the purpose of getting this lien released Painter paid the bank $1,500.00 and obtained the title to the truck. There was a controversy between the parties concerning this latter sum of money.

The new truck was delivered to Mr. Higgins on August 3, 1964 and on August 28, while the truck was on the job, an agent of Painter and International approached the defendant, told him that a mistake had been made and that they would have to enter into a new contract. This was done on the latter date, the alleged violation of such contract giving rise to this controversy. Alleging that the defendant was in default in his payments, the truck was repossessed on March 23, 1965. After a meeting with representatives of Painter and International Harvester, the latter agreed to allow the defendant to continue to use the truck upon the defendant's promise to make certain payments and pay $609.47 per month until it was paid for in full. It appears from the record that the defendant asserts that a new contract was entered into by the parties. The plaintiff and International deny such assertion.

According to the defendant, Mr. Garrison, an agent of International was to collect the monthly payments. The defendant made the required payments and the truck was released to him. Thereafter he made three monthly payments. Mr. Garrison did not call upon the defendant for the May payment until June 9 at which time such payment was made. The agent returned on June 21 for the

June payment and that payment was made. Checks denoting such payments were apparently accepted by International.

On June 28, 1965, agents of Painter and International, without informing the defendant, repossessed the truck and took it to Painter's garage. Upon learning of the repossession, Mr. Higgins stopped payment on the June 21, 1965 check. There is a letter in the record dated June 28, 1965, from International to Mr. Higgins, which acknowledged that no payments were due at that time. That letter claimed that the last payment was short in the amount of $27.42 and asked for that amount if Mr. Higgins agreed that it was due. That amount was apparently interest claimed for late payment.

International Harvester subsequently sold the truck to Painter Motors and the latter, claiming that there was a deficiency, instituted this action against the defendant.

Aside from the complaint filed by Painter, the answer and cross-claim of the defendant and a further third-party complaint, there were many additional pleadings and amended pleadings, all of which tended to add to the confusion apparent in the record.

An examination of the record in this case fails to reveal clearly what transpired in the proceedings below. It appears that on January 21, 1969 the court conducted a pretrial conference at which the following were defined as the two primary issues: "(1) Whether or not the plaintiff, Painter Motors, Inc., is entitled to recover any sums of money from the defendant, Cletis Higgins, and (2) whether or not Painter Motors, Inc. and International Harvester Credit Corporation or either of them wrongfully converted a certain truck purchased by Cletis Higgins, and if so, was the defendant Cletis Higgins damaged thereby."

At the direction of the court a second pretrial hearing was held on March 4, 1969 wherein various exhibits were

tendered by the parties and objections made to their introduction. It appears that at the conclusion of the second pretrial conference the court ruled that there would be an evidentiary hearing in the courtroom on the following day to hear testimony of witnesses on the material and relevant issues of fact and to permit an opportunity for the court to rule on the admissibility of exhibits "to be offered in evidence at this trial next Monday." Further, at this hearing the court indicated that it would construe and interpret the contract or contracts involved in this action.

The record discloses that such evidentiary hearing was held on March 5, 1969 and continued on March 6, at the conclusion of which Painter and International renewed their motions to dismiss the counterclaim and third-party complaint filed by Higgins. At this stage of the proceedings, as noted in the court's order of March 27, 1969, the court found that Painter "is entitled to recover from and of Cletis Higgins and shall hereby have judgment against Cletis Higgins for the sum of $715.46, that being the deficiency after said resale of subject truck * * *." That order further provided that Higgins "shall not recover and take any money from Painter Motor, Inc. * * * and International Harvester Credit Corporation in this action * * * and the counterclaim, cross-claim and third-party complaint of Cletis Higgins are hereby dismissed." Thereafter defendant moved the court to set aside its "directed verdict" and judgment and moved that a jury trial be awarded to determine the damages sustained by the defendant. The trial court by its order of April 14 denied the defendant's motion and this appeal was prosecuted.

It appears but it certainly is not clear in the record of this case that the defendant took the position that after the March 23, 1965 repossession a new contract was entered into between the parties and that by reason thereof he was not in default. Painter and International denied the existence of a new contract but asserted that they released the truck to him under the old contract and that the terms thereof prevailed. It further appears that the

court ruled that there was not a novation or new contract and thereupon granted the motions of the plaintiff and International to dismiss the cross-claim and third-party complaint and entered judgment for the plaintiff. It is not clear why the court considered his ruling on novation as dispositive of all of the issues involved in the case. A most pertinent question remains, that being what constituted the default by the defendant which would warrant the repossession and sale of the subject truck.

In the present state of the record of this case it is difficult to follow the proceedings in the court below which led to the judgment. The court directed that there be an evidentiary hearing, a proceeding which is generally preliminary, in character, to a trial. In fact, as indicated herein, the court referred to the trial date as "next Monday". Yet, at the conclusion of this evidentiary hearing the court entered a judgment which purported to be a final adjudication of the rights of the parties.

Many matters are left in limbo by the proceedings below. It appears that at one time or another all parties requested a jury trial. None was had but instead the evidentiary hearing was converted into a trial by the court. In view of the many conflicts it is difficult to understand on what basis the trial court decided this case, without having had these conflicts resolved by a jury. Furthermore, it is not clear in the record what constituted the default which led to the final repossession and sale of the subject truck. It is our opinion that the proceedings below do not constitute a satisfactory basis for the judgment entered by the court and that these matters must be resolved in a proper trial. The disposition of this case is most unusual and, in view of the time spent and the costs expended by the parties, such disposition is regrettable. However, in view of the uncertainties noted in the record the judgment of the Circuit Court of Randolph County must be and it is hereby reversed and the case is remanded for a new trial. See *South Side Lumber Co.* v. *Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721.

*Reversed and remanded.*