450 S.E.2d 779

Pamela Katherine HENRY, Appellant,

v.

Diana L. JOHNSON, Family Law Master
of Mason County, and Howard Lee
Henry, Appellees.

No. 22030.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 1994.

Decided Oct. 28, 1994.

Norman Googel, West Virginia Legal Services Plan, Inc., Huntington, for appellant.

Elizabeth A. Pyles, Pyles & Auvil, Parkersburg, for appellee Howard Lee Henry.

NEELY, Justice:

Pamela Katherine Henry petitions this court for appeal from an order entered by Mason County Circuit Judge O.C. Spaulding on 8 September 1993, refusing to issue a rule to show cause why a temporary order by Family Law Master Diana L. Johnson awarding custody of her epileptic daughter Amanda to Mrs. Henry's husband, Howard Henry should not be prohibited.

Mr. and Mrs. Henry married on 24 April 1986, in Giles County, Virginia. Mrs. Henry worked within the home, taking care of their three children. Mr. Henry continues to work as a boilermaker.

Mrs. Henry is currently suing Mr. Henry for divorce. Diana L. Johnson, Family Law Master of Mason County is assigned to hear the divorce. On 18 August 1993, Family Law Master Johnson held a temporary hearing in response to Mrs. Henry's motion seeking custody of the children during pendency of the divorce action. The hearing consisted of the presentation of oral and documentary evidence by way of proffer only. Mr. Henry and Mrs. Henry were not permitted to testify.

In the 19 August 1993 ruling, Family Law Master Johnson found that Mrs. Henry was the primary caretaker of the three children, Samantha, then age 4; Jeffrey, then age 2; and Amanda, then age 6. However, Mrs. Henry was awarded only temporary custody of Samantha and Jeffrey. Mr. Henry was awarded temporary custody of Amanda.

There was no explicit finding that Mrs. Henry was an unfit mother. In addition, the Family Law Master's opinion made no reference to the proffered Domestic Violence Protective Order issued against Mr. Henry, at Mrs. Henry's request by Mason County Magistrate John Reynolds, on 13 May 1993. Instead, the Family Law Master's opinion stated that: "[a] review of the records provided appear to indicate that the Plaintiff is unable to cope with the difficulties Amanda's medical condition and behavior cause."

Mrs. Henry subsequently filed a petition for a writ of prohibition with Mason County Circuit Judge O.C. Spaulding on 8 September 1993. Upon reviewing the petition and attached exhibits, Judge Spaulding issued an Order refusing to issue a rule to show cause and also refusing to stay the Family Law Master's temporary order pending appeal to this court. On 16 October 1993, this court granted a stay of the Family Law Master's temporary order pending resolution of this appeal. As a result of the stay, Mrs. Henry has retained custody of all three children.

I.

The primary issue in this case is Mrs. Henry's contention that she also should have been awarded temporary custody of Amanda. Mrs. Henry asserts three assignments of error in the circuit court's refusal to grant a writ of prohibition against the Family Law Master's temporary order granting custody of Amanda to Mr. Henry: (1) the circuit court erred in failing to issue the rule to

show cause inasmuch as the Family Law Master violated Mrs. Henry's right to due process by denying the right to be heard at the temporary hearing in her divorce case; (2) the circuit court erred in failing to issue the rule to show cause inasmuch as the Family Law Master had a duty to award custody of all three children to Mrs. Henry, upon finding that she was the primary caretaker and that she was not unfit; (3) the circuit court erred by refusing to issue the rule to show cause inasmuch as the Family Law Master had a duty to consider evidence of Mr. Henry's acts of domestic violence in making her custody determination.

█ Divorce and custody proceedings are subject to traditional standards of procedural and substantive due process. In the Syllabus of *Crone v. Crone*, 180 W.Va. 184, 375 S.E.2d 816 (1988), we held that "[t]he due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard. Syl. pt. 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937)." Although both parties had notice in this case, there is insufficient evidence in the record to conclude whether Mrs. Henry had a meaningful opportunity to be heard by way of proffer.

█ The simple fact that the evidence was by proffer, and not presented in a full evidentiary hearing, does not automatically negate a finding that due process was observed. Under the *West Virginia Rules of Practice and Procedure for Family Law*, effective 1 October 1993, Rule 14 expressly authorizes the presentation of evidence by proffer at hearings on motions for temporary relief, unless, "(b) after hearing the proffer, the family law master or the circuit judge determines that there are compelling reasons for conducting an evidentiary hearing on some or all of the issues raised." Furthermore, under *W.Va.Code*, 48A–4–9(c)(2) [1993], the family law master is authorized to rule on offers of proof in hearing.

If sufficient evidence had been proffered, then Mrs. Henry's due process rights would have been vindicated. However, this is a temporary custody proceeding involving the separation of an epileptic child from her two siblings, and from the mother who was her primary caretaker from birth. This is not a hearing on the disposition of an inanimate object such as a television, or a set of golf clubs. Under the circumstances of this case, we conclude that a more elaborate evidentiary hearing is warranted.

## II.

The Family Law Master's temporary custody order granting Mr. Henry the custody of Amanda seemed to turn on Mrs. Henry's ability or lack thereof to provide adequate medical supervision for Amanda because of her epilepsy. The evidence proffered on this issue was inconclusive. There is simply not enough information before this court to determine Mrs. Henry's fitness to care for Amanda.

█ "To be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child. In this last regard, restrained normal sexual behavior does not make a parent unfit." Syl. pt. 5, *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989); Syl. pt. 2, *Richardson v. Richardson*, 187 W.Va. 35, 415 S.E.2d 276 (1992).

█ Mrs. Henry submits that she was the one who took care of Amanda's medications, interacted with the doctors, and stayed by Amanda's side during routine doctors' visits as well as emergency hospitalizations. Mr. Henry proffered evidence that Mrs. Henry questioned a doctor's order, in an emergency, tripling Amanda's medication and causing extreme drowsiness. Subsequently, Mrs. Henry checked Amanda out of the hospital against that doctor's orders. The very next day, Mrs. Henry took Amanda to a different facility for examination and treatment by her daughter's regular physician.

Mr. Henry points to the incident as if checking Amanda out of the hospital against a doctor's order shows Mrs. Henry's unfit-

ness as a mother. Yet a nurse's report shows that although Mrs. Henry checked Amanda out, Mr. Henry also gave his consent to discharge Amanda in a phone conversation with the nurse. Mrs. Henry's actions appear to be the concerned and well reasoned actions of a mother who is familiar with her daughter's usual dosage of medication and more comfortable with treatments suggested by her child's regular doctor, rather than the opinions of a new doctor. Certainly, based on that one incident alone, it would be an abuse of discretion for a court to decide that Mrs. Henry is an unfit parent for Amanda.

■ Much is also made of Amanda's medical records in which doctor's comments include information supplied by the mother stating that Amanda's behavior is uncontrollable. Hence, Mr. Henry's conclusion that Mrs. Henry is unable to handle Amanda. This could also be the source of the Family Law Master's temporary custody order stating that Mrs. Henry is "unable to cope with the difficulties Amanda's medical condition and behavior cause." Full and adequate disclosure of possible symptoms enable physicians properly to diagnose and treat their patients, however. To encourage a free flow of information between doctor and patient, the law has recognized the value of doctor patient confidentiality, and in these circumstances we find that the Family Law Master drew too strong a conclusion from a comment offered for clinical purposes.

Hyperactivity is a technical term frequently referred to in lay terms as uncontrollable behavior.[1] Behavioral disorders in adults and children can be side effects of certain medications, and once identified, can sometimes be controlled by simply switching the medicine. We hesitate to discourage a parent's need to secure accurate diagnosis and treatment for her children by penalizing full disclosure of symptoms for fear that information will later be used against the parent in a custody proceeding.

Although Mr. Henry now claims that Mrs. Henry "by virtue of a limitation of intelligence or inclination, is either unwilling or unable to consistently tend to the medical needs of that child," her incapacity was not such that before separation Mr. Henry felt compelled to take over the supervision of Amanda's medical care, or that of his only son Jeffrey who was born with a heart murmur and who also required special care. In any event, the Family Law Master's temporary custody order cites vague generalities without pointing to any specific evidence that would provide a reviewing court with guidance in a matter of such importance as determining parental fitness in a child custody proceeding.

Although this case involves a temporary custody order and not a final disposition, the importance of having enough evidence before the court to determine the correct legal ruling is no less significant. We have recognized the problem of procedural delay in child abuse and neglect cases, as well as in child custody matters. *In the Interest of Carlita B.*, 185 W.Va. 613, 622, 408 S.E.2d 365, 374 (1991). Often years will pass before final resolution, during which child custody is determined by a "temporary" order.

■ As we stated in the Syllabus of *Richardson v. Richardson*, 187 W.Va. 35, 415 S.E.2d 276 (1992): "In a divorce suit the finding of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of evidence." Syl. pt. 1, *Richardson*. However, this Court has recognized that when a record is unclear and factual development would aid in reaching the correct decision, a remand is warranted. Such is the status of the record in this case. "When the record in an action or suit is such that an appellate court can not [sic] in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development." Syl. pt. 2, *South Side Lumber Co. v. Stone*

---

1. Refer to Dr. Kim's clinical notes on 2 August 1991, Appellant's Reply Brief at 4:
   "Her behavior has been absolutely intolerable. Mom is concerned that the anticonvulsive medication may be the cause or certainly ag-

gravating the behavior problems.... Exam shows indeed an extremely *hyperactive* 4 year old though alert and afebrile...." [Emphasis added.]

*Const. Co.*, 151 W.Va. 439, 152 S.E.2d 721 (1967); Syllabus, *Painter Motors, Inc. v. Higgins*, 155 W.Va. 582, 185 S.E.2d 502 (1971); Syl. pt. 4, *Patricia Ann S. v. James Daniel S.*, 190 W.Va. 6, 435 S.E.2d 6 (1993); 27 C.J.S. *Divorce* § 754 (1986).

The final issue raised is the domestic violence protective order issued by Mason County Magistrate John Reynolds, finding that Mr. Henry had abused Mrs. Henry. Mr. Henry did not appeal the Magistrate's ruling. In *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 714, 356 S.E.2d 464, 468 (1987), we "recognized that spousal abuse is a factor to be considered when determining parental fitness for child custody." *See e.g., Collins v. Collins*, 171 W.Va. 126, 297 S.E.2d 901 (1982) (mother fired shots in direction of father attempting to exercise visitation rights demonstrated violent tendencies rendering her unfit for custody); *Kenneth B. v. Elmer Jimmy S.*, 184 W.Va. 49, 52, 399 S.E.2d 192, 195 (1990) (terminated parental rights of husband convicted of murdering wife).

■ It is clear that where domestic violence is present it should be considered when determining parental fitness.[2] Being a victim of domestic abuse may have temporarily impaired Mrs. Henry's ability to care for Amanda, leading the family law master to conclude she is unfit. In addition, if, as Mr. Henry alleges, stress aggravates Amanda's medical condition, the mere fact that Mr. Henry no longer shares a household with Mrs. Henry will eliminate any of Amanda's stress that may have been caused by exposure to spousal hostilities. As a result, the separation pending final divorce may make Amanda easier to manage.

In the findings underlying West Virginia's domestic violence statute, the state legislature recognized that: "[c]hildren are often physically assaulted or witness violence against one of their parents and may suffer deep and lasting emotional harm from victimization and from exposure to family violence." *W.Va.Code*, 48–2A–1(a)(2) [1992]. Consequently, a family law master should take domestic violence into account when making an award of temporary custody. The family law master declined to address the domestic abuse issue in her temporary custody order. That omission makes it impossible for this court to determine whether the presence of spousal abuse was considered. The domestic abuse issue should be developed below in conjunction with the determination of Mrs. Henry's fitness to have custody of Amanda.

■ Based upon the foregoing, we remand this case to the circuit court for a full evidentiary hearing in order further to develop the record to determine whether Mrs. Henry, as the primary caretaker, is fit to have temporary custody of Amanda. Mrs. Henry shall continue to have custody of Amanda pending the outcome of the proceedings below. In light of the gravity of the subject matter and the acknowledged long-term effects of a temporary child custody order, a family law master should assure an adequate record for appellate review before entering an order changing temporary custody. We, therefore, find it appropriate to remand this case to the circuit court for a full evidentiary hearing.

For the foregoing reasons, the judgment of the Circuit Court of Mason County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

---

**2.** By 1992, thirty-three states and the District of Columbia required Courts to consider domestic violence in determining custody and visitation. *Developments in the Law: Legal Responses to Domestic Violence,* 106 HARV.L.REV. 1597, 1603 (1993) (citing Barbara J. Hart, *State Codes on Domestic Violence: Analysis, Commentary and Recommendations,* 43 JUV. & FAM.CT.J., No. 4, 1992, at I, 29.).