452 S.E.2d 428

Kelly Jo FEASTER, Plaintiff
Below, Appellant

v.

Barth Baren FEASTER, Defendant
Below, Appellee.

No. 22565.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 29, 1994.

Decided Dec. 8, 1994.

J. David Judy III, Judy & Judy, Moorefield, for appellant.

James Paul Geary II, Geary & Geary, Petersburg, for appellee.

PER CURIAM:

In this divorce and child custody proceeding, Kelly Jo Feaster, the plaintiff below and appellant, and Barth Baren Feaster, the defendant below and appellee, both sought custody of their infant son, Nathaniel Lee.[1] The Family Law Master (FLM) concluded that Mrs. Feaster was the primary caretaker and recommended that she should have custody

1. Nathaniel was born on February 5, 1989, and is now five years old.

2. Mrs. Feaster was pregnant with Mr. Coppe's child at the time she moved in with him. She gave birth to their daughter, Samantha, on January 25, 1993.

3. Mr. Feaster denies that any abuse took place.

of Nathaniel. The circuit court adopted all the FLM's Findings of Fact and Conclusions of Law, except those finding that Mrs. Feaster was the primary caretaker. The circuit court found that Mr. Feaster was the primary caretaker and awarded him custody. This appeal ensued.

The evidence shows that the parties were married in September of 1988 in Keyser, West Virginia. Mrs. Feaster commenced the divorce action in July of 1992. She moved out of the home and filed a domestic violence petition after Mr. Feaster beat her. Mrs. Feaster attempted to take Nathaniel with her, however, Mr. Feaster threatened her with physical abuse and would not allow Nathaniel to leave with her. Mrs. Feaster had no source of income and moved in with her boyfriend, John Coppe.[2]

■ By order entered July 28, 1992, the Circuit Court of Grant County found that Mrs. Feaster was abused by her husband on July 13, 1992.[3] However, the circuit court granted temporary custody of Nathaniel to Mr. Feaster. Mrs. Feaster was allowed liberal visitation. It is not clear from the record why Mr. Feaster was awarded temporary custody when it appears that Mrs. Feaster was the primary caretaker of Nathaniel. Furthermore, the circuit court should have considered the allegations of domestic violence when making this award of temporary custody. In *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 714, 356 S.E.2d 464, 468 (1987), this Court "recognized that spousal abuse is a factor to be considered in determining parental fitness for child custody."

■ In January of 1994, a hearing was held before the FLM.[4] A social worker performed a detailed home study report. She conducted a thorough investigation of the parties, their family members, and certain acquaintances of the parties. Results of the

4. The reason for the delay in bringing this case on for hearing before the FLM is not clear from the record before this Court. The defendant argues that the plaintiff caused the delay because she failed to make arrangements for the home study.

home study were admitted into evidence. It appears that both Mr. and Mrs. Feaster were actively involved in raising Nathaniel and were fit parents. Mrs. Feaster assumed the primary caretaker role when Mr. Feaster held a job which required him to commute to Virginia. Mr. Feaster assumed the primary caretaker role when Mrs. Feaster moved out of the home on several different occasions to be with her boyfriend. The final assessment of the home study states:

"While Mr. Feaster appears to be meeting his son's needs, there is no evidence to indicate Mrs. Feaster is unfit or incapable of rearing her son. She attempted to take him when she left the home, but was prevented from doing so. Due to his age, some consideration should be given to granting custody to her with liberal visitation to the father."

The FLM heard the conflicting evidence on the issue of which parent was Nathaniel's primary caretaker. The FLM found:

"[W]hile the Defendant and the infant child have an extremely close relationship, which is further strengthened by a good support group in the Defendant's immediate family, the Plaintiff, under the totality of the circumstances, was the primary care taker of the infant child prior to the date of the separation of the parties."

The FLM recommended that Mrs. Feaster have custody of Nathaniel. It was further recommended that Mr. Feaster be granted liberal visitation rights.

Mr. Feaster filed exceptions to the recommended order of the FLM. He argued that he had enjoyed the exclusive custody of Nathaniel for over a year and, therefore, he was the primary caretaker. The circuit court reviewed the taped proceedings held before the FLM, reviewed the record, and heard the arguments of the parties. The circuit court affirmed all the FLM's Findings of Fact and Conclusions of Law except those dealing with custody of Nathaniel. The circuit court found that "Barth Baren Feaster was the primary caretaker of the infant child prior to the date of the separation of the parties; and has had the continuous care and custody of the infant child since ordered by this Court on the 28th day of July, 1992."

Under W.Va.Code, 48A–4–20(c) (1993), a circuit court "may, in its discretion, enter an order upon different terms" than the FLM's recommended order "as the ends of justice may require." The statute further states, in pertinent part:

"The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

"(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;

"(2) Contrary to constitutional right, power, privilege or immunity;

"(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

"(4) Without observance of procedure required by law;

"(5) Unsupported by substantial evidence; or

"(6) Unwarranted by the facts."

In *Higginbotham v. Higginbotham,* 189 W.Va. 519, 432 S.E.2d 789 (1993), this Court interpreted the language of the statute to mean that the FLM's findings and conclusions must fall within one of the above criteria before they could be overturned by the circuit court. Syllabus Point 1 of *Higginbotham* states:

"W.Va.Code, 48A–4–10(c) (1990), [now 48A–4–20(c) (1993) ] limits a circuit judge's ability to overturn a family law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, Rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known its factual findings and conclusions of law."

The circuit court did make known its factual findings and conclusions of law, as this Court indicated in Syllabus Point 2 of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990). The circuit court articulated the reason for the changes in the FLM's recommended order. The circuit court opined that, based on the evidence, Mr. Feaster was the primary caretaker. However, the circuit

court failed to specify which one of the six statutory criteria warranted the change in the FLM's conclusions.

■ We find that the circuit court improperly substituted its judgment over that of the FLM's recommendation without specifying how the FLM's findings and conclusions were deficient.[5]

Furthermore, based on the record and documents filed with this Court, we do not find that the FLM's findings and conclusions are "arbitrary, capricious, an abuse of discretion" or that they fall under any of the other criteria set forth in W.Va.Code, 48A–4–20(c). Accordingly, we reverse the decision of the circuit court.

Finally, this Court is troubled by the procedural delays in this child custody case. Mr. Feaster gained temporary custody in July of 1992. However, the hearing was not held before the FLM until January 24, 1994. Whatever the reason for this delay, it is inexcusable. This Court has long recognized that child custody matters should be resolved quickly. "We have recognized the problem of procedural delay in child abuse and neglect cases, as well as in child custody matters. *In the Interest of Carlita B.*, 185 W.Va. 613, 622, 408 S.E.2d 365, 374 (1991). Often years will pass before final resolution, during which child custody is determined by a 'temporary' order." *Henry v. Johnson,* 192 W.Va. 82, 450 S.E.2d 779 (1994).

As we have previously said in *James M. v. Maynard,* 185 W.Va. 648, 658, 408 S.E.2d 400, 410 (1991), it can be a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians.

"Lower courts in cases such as these should provide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods 'should be developed in a manner intended to foster the emotional adjustment of . . . [the] children to this change . . .' and to maintain as much stability as possible in their lives. *Honaker* [*v. Burnside,* 182 W.Va. 448, 452] 388 S.E.2d [322] at 326 [ (1989) ]."

Accordingly, the circuit court should direct a gradual transition period for Nathaniel to move to the home of his mother. The transition period should provide for increasing amounts of visitation and overnight stays with Mrs. Feaster before she obtains full custody. The circuit court should arrange this schedule "in a manner intended to foster the emotional adjustment" of Nathaniel "while not unduly disrupting the lives of the parties[.]" *Honaker, supra,* 182 W.Va. at 453, 388 S.E.2d at 326.

Based on the foregoing, the decision of the Circuit Court of Grant County is reversed, and this case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**5.** Based on the record before this Court, we suspect that certain evidence may have been considered that was irrelevant to determining the primary caretaker of Nathaniel and was unfairly prejudicial to Mrs. Feaster. The evidence is clear that Mrs. Feaster did not willingly abandon Nathaniel, but attempted to take him with her as she fled an abusive marriage. Mr. Feaster threatened her and would not let her take Nathaniel. The period of time Nathaniel was in the sole custody of Mr. Feaster should not have been considered because to do so would, in effect, reward his abusive behavior toward his wife.

Without having financial independence, Mrs. Feaster was forced to move in with her boyfriend. She later gave birth to his child. It appears from the interviews conducted by the social worker performing the home study that at least some of the neighbors believed Mrs. Feaster "would have had it coming" if she were beaten because she was living with a black man. Clearly, it would be wrong to consider these prejudicial attitudes and stereotypes in determining the primary caretaker of Nathaniel.

It is not clear from the record whether the circuit court relied on such evidence nor are we determining that it did.